**OMAHA PUBLIC POWER DIST. et al. v. O'MALLEY.**

**Civ. No. 50–51.**

United States District Court
D. Nebraska, Omaha Division.

Aug. 25, 1953.

4

Brown, Crossman, West, Barton & Quinlan and Thos. C. Quinlan, Omaha, Neb., and Stinson, Mag, Thomson, McEvers & Fizzell and Reece A. Gardner, Kansas City, Mo., for plaintiffs.

Joseph T. Votava, U. S. Atty., District of Nebraska, Omaha, Neb., and Harvey M. Spear, Washington, D. C., Sp. Asst. to Atty. Gen., for defendant.

DONOHOE, Chief Judge.

█ Petitioners have brought this action to recover certain taxes which they allege were erroneously and unlawfully assessed and collected by George W. O'Malley, formerly Collector of Internal Revenue for this district. Since the action was started prior to Mr. O'Malley's retirement, this court has jurisdiction, 28 U.S.C.A. § 1340, and the action survives his retirement. See Patton v. Brady, 184 U.S. 608, 22 S.Ct. 493, 46 L.Ed. 713. All the conditions precedent to the institution of a suit for refund of federal taxes have been fulfilled. 26 U.S.C.A. § 3772. The cause was tried to the Court without a jury and the Court, adopting in toto the stipulation of facts submitted by the parties, hereby announces them, as modified, in keeping with the requirements of Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A., as the special

Findings of Fact:

The defendant, George W. O'Malley, was for a period commencing prior to May 1, 1946, to and including October 17, 1952, the Collector for the Internal Revenue Collection District of Nebraska.

This action was brought against the defendant on May 8, 1951, for the recovery of taxes in the aggregate amount of $151,-552.68, together with interest thereon from the dates of payment thereof. Said sum of $151,552.68 was collected by the defendant and paid by the plaintiff, Nebraska Power Company, as tax imposed by section 3411 of the Internal Revenue Code on electrical energy sold by said Nebraska Power Company during the period May 1, 1946, to and including December 2, 1946, for the

months, in the amounts and on dates as follows:

| For the Month of | Amount Paid | Date Paid |
|---|---|---|
| May, 1946 | $ 19,597.21 | 6/27/46 |
| June | 19,873.29 | 7/29/46 |
| July | 19,269.52 | 8/29/46 |
| August | 20,304.49 | 9/30/46 |
| September | 20,196.49 | 10/28/46 |
| October | 21,024.67 | 11/27/46 |
| November | 21,519.64 | 12/31/46 |
| For the period ended December 2, 1946 | 9,767.37 | 1/23/47 |
| | $151,552.68 | |

Nebraska Power Company was organized on April 23, 1917, under the laws of the State of Maine for the purpose of acquiring, owning and operating electric and power plants and a distribution system in eastern Nebraska. During all of the time material herein it has been qualified to do business in the States of Nebraska and Iowa, and it has maintained and does now maintain its principal place of business in the City of Omaha, Nebraska. By 1939 and thereafter said corporation owned and operated electric and power plants in the State of Nebraska and a distribution system which furnished electrical energy to an area of approximately 2,500 square miles in eastern Nebraska including the City of Omaha, Nebraska, and more than 25 other Nebraska cities and villages and approximately 500 square miles in western Iowa.

Prior to the year 1933, surveys had been made in the State of Nebraska which established the necessity for low-cost power in that state, and plans had been developed for the creation of public districts for the purpose of constructing hydroelectric power plants and selling electrical energy. In furtherance of this program the Nebraska Legislature enacted and on April 18, 1933, the Governor approved Senate File No. 310, Chapter 86, Laws of Nebraska, 1933 (now embodied in sections 70–601 to 70–679, inclusive, Revised Statutes of Nebraska, 1943), known as "Public Power and Irrigation District Act". By reason of an emergency clause the Act became effective immediately upon approval by the Governor.

In May and June, 1933, Loup River Public Power District, Platte Valley Public Power and Irrigation District and Central Nebraska Public Power and Irrigation District were incorporated under the statute referred to in the preceding paragraph, and by the terms of said statute they became and now are public corporations and political subdivisions of the State of Nebraska. Said Districts then constructed hydroelectric power plants on the principal rivers in Nebraska.

On October 2, 1939, Nebraska Power Company and Loup River Public Power District entered into a wholesale energy agreement.

In 1939, to further the conversion to public ownership of the electric and power plants and distribution systems in Nebraska, the Districts (Loup River, Platte Valley and Central Nebraska) caused Consumers Public Power District to be incorporated under and in accordance with the Public Power and Irrigation District Act for the purpose of acquiring by purchase the power generating and distribution facilities of privately-owned corporations engaged in the business of selling electrical energy in Nebraska. That District then employed Guy C. Myers as its fiscal agent to negotiate for the purchase of such power generating and distribution facilities. By the end of 1943, Consumers Public Power District had acquired all such facilities, except those owned by Nebraska Power Company and by that time all electric and power plants and distribution systems in Nebraska, except those of Nebraska Power Company, were owned and were being operated by either said public power districts or by municipal corporations, all of which were political subdivisions of the State of Nebraska. For the properties acquired from said privately-owned corporations, Consumers Public Power District paid an aggregate purchase price of $40,750,556.68, and for his services in negotiating such purchases said District paid Guy C. Myers fees aggregating $907,002.69.

In May, 1942, Consumers Public Power District made a public offer to purchase

from American Power & Light Company the power-generating and distribution facilities of Nebraska Power Company for the sum of $40,680,000. That action aroused a group of Omaha citizens to investigate the possibility of acquisition in some manner of the properties of Nebraska Power Company by the City of Omaha, by reason of the fact that they were opposed to the acquisition of those properties by any district not controlled within the geographical limits of the area served by the company. For that purpose Mayor Dan B. Butler appointed a committee consisting of William J. Coad, president of Omar, Inc.; Herbert Bushnell, president of the United States National Bank; Gerald Collins, an Omaha attorney; L. P. Campbell, president of Byron Reed Real Estate Company; Don B. Woodyard, manager of the Omaha store of J. C. Penney & Co.; Dale Clarke, president of Omaha National Bank; Thomas F. Davis, president of First National Bank of Omaha; Sam Reynolds, president of Updike-Reynolds Coal Company; and L. J. TePoel, former dean of Creighton University School of Law. That committee sent representatives to New York, Chicago, and Boston to attempt to interest securities dealers and life insurance companies in a possible financing arrangement but met with no success, because the securities dealers and insurance companies required that the obligations to finance the purchase of the facilities be issued by a public agency, and the kind of public agency which could be established under existing statutory provisions was not satisfactory to the committee.

Between August 22, 1942, and December 2, 1946, Nebraska Power Company had issued and outstanding 1,000,000 shares of common stock. Of those 1,000,000 shares on August 22, 1942, American Power & Light Company, a subsidiary of Electric Bond and Share Company, owned 965,991 shares and by December 26, 1944, it had increased its holdings in that stock to 970,992 shares. On December 26, 1944, Nebraska Power Company also had issued and outstanding 51,962 shares of 7% preferred stock and 22,561 shares of 6% preferred stock, par value $100 a share,

$16,500,000 First Mortgage 4½% Bonds, due in 1981, and $3,500,000 6% debentures, due in 2022. During the period here involved, each outstanding share of stock, including said preferred stock, entitled the holder thereof to one vote, but the bonds and debentures did not confer upon the holders thereof any voting rights.

On August 22, 1942, the Securities and Exchange Commission of the United States ordered (11 SEC Decs. and Reps., pp. 1146, 1223, affirmed American Power & Light Company v. Securities and Exchange Commission, 1 Cir., 141 F.2d 606, 610) that American Power & Light Company be terminated and dissolved under the supervision of the Commission.

At the instance of a committee of citizens of Omaha, Nebraska, and for the purpose of enabling them to take advantage of the said order of the Securities and Exchange Commission and acquire the stock or properties of Nebraska Power Company, the Nebraska Legislature enacted Chapter 36, Laws of Nebraska, 1943, p. 156, known as "Peoples Power Commission Law" (now embodied in sections 14–1501 to 14–1523, Revised Statutes of Nebraska, 1943) and by reason of an emergency clause it became effective immediately upon its approval by the Governor on May 26, 1943.

Under and in accordance with the provisions of said Act, by resolution of the City Council of Omaha, Peoples Power Commission of the City of Omaha was created. The first members of the committee consisted of Dan B. Butler, the Mayor; George F. Ashby, executive vice president of Union Pacific Railroad; Gerald F. Collins; Edward F. Leary, an Omaha attorney; T. H. Maenner, an Omaha realtor; Grant McFayden, an automobile dealer of Omaha; and Don B. Woodyard; all of whom were appointed by the Mayor and City Council of Omaha, and Dr. B. H. Baer, a physician residing in Ashland, Nebraska, and Emil E. Wolf, a banker of North Bend, Nebraska, who were appointed by the Governor of Nebraska. Thereafter Mr. Ashby had a conference with H. L. Aller, president of American Power & Light Company, who advised that the Nebraska Power Company was not for sale. The Commission then

again submitted to Mr. Aller an offer of $40,680,000 for the Nebraska Power Company properties. That offer was likewise refused and before anything further could be accomplished by the Commission, litigation was instituted, State ex rel. Nelson v. Butler, 145 Neb. 638, 17 N.W.2d 683, and on February 23, 1944, an injunction was issued by the lower court restraining Peoples Power Commission of the City of Omaha from taking any official action of any kind, including negotiation for or the acquisition of Nebraska Power Company's stock or properties.

In March, 1945, Grant McFayden died and the remaining members of the Commission resigned. Thereupon, the Governor of Nebraska appointed to the Commission Roy E. Bott, an implement dealer residing in Hooper, Nebraska, and Karl C. Brown, vice president of the Banking House of A. W. Clarke, of Papillion, Nebraska; and Mayor Butler appointed Samuel L. Cooper, president of Orchard and Wilhelm Co., an Omaha department store, David Goldman, president of Herzberg's Inc., an Omaha women's apparel store; J. M. Harding, former president of Harding Ice Cream Company and vice president of World Publishing Company, then retired; Clarence L. Kirkland, general manager of Omaha Industries, Inc.; C. E. Metzger, a member of Roberts Brothers and Wells, an Omaha livestock commission company; and Charles D. Saunders, vice president of The First National Bank of Omaha. As so constituted the membership of the Commission continued until May 8, 1945, when the Commission ceased to have legal existence.

In September, 1944, in order to avoid a possible loss of the advantage presented by the August 22, 1942, order of the Securities and Exchange Commission of the United States directing American Power & Light Company to dissolve, Dr. B. H. Baer, Emil E. Wolf, Edward F. Leary, T. H. Maenner and Don B. Woodyard, together with Sidney J. Cullingham, an Omaha realtor and State Senator, from November 3, 1942, to November 4, 1946, inclusive; Bernard R. Stone, an Omaha attorney; and W. W. Wenstrand, an Omaha attorney employed by the firm of

Crofoot, Fraser, Connolly & Stryker, formed a committee known as the "Power Committee". On September 19, 1944, that committee entered into a contract with Guy C. Myers authorizing Myers to act as agent for the committee in negotiating the purchase of the assets of the Nebraska Power Company.

After discussions with representatives of Loup River Public Power District, a representative of John Muveen & Company, an investment banking company of Chicago, Illinois, Robert Beck, utility engineer, and Myers, the Power Committee employed C. Russell Mattson, an attorney at Lincoln, Nebraska, to organize under the General Non-Profit Corporation law of the State of Nebraska (Chapter 55, Laws of Nebraska, 1943, now embodied in sections 21–1523 and 21–1529, inclusive, Revised Statutes of Nebraska, 1943), a non-profit corporation without capital stock under the name of Central West Irrigation Company. That company was duly incorporated on December 9, 1944. At the meeting of the incorporators held that day A. C. Taylor, C. Russell Mattson and Roy Butterbaugh, all of Lincoln, Nebraska, were elected as directors and as president, vice president and secretary-treasurer, respectively. At a special meeting of the board of directors held on December 11, 1944, Taylor and Butterbaugh resigned as officers and directors and Bernard R. Stone was elected as a director and as president and Sidney J. Cullingham was elected as a director and as secretary-treasurer. At a special meeting of the board of directors held on January 27, 1945, Mattson resigned as vice president and director, and W. W. Wenstrand was elected to hold both of those offices. At a special meeting of said board held on October 1, 1945, W. W. Wenstrand resigned as president, whereupon T. H. Maenner was elected as president and a director, Bernard R. Stone was elected as vice president, and Dr. B. H. Baer, Gerald E. Collins, and Emil E. Wolf were elected as additional directors. As thus constituted the officers and directors continued without change during all of the period here involved.

On December 11, 1944, Myers entered into an agreement with American Power &

8

Light Company to purchase for the sum of $14,175,000 plus $3,000 a day from October 5, 1944, to the date of closing of the sale 970,992 shares of the common stock of Nebraska Power Company and he also acquired options to purchase the remaining 29,008 shares from the holders thereof. With the consent of American Power & Light Company Myers assigned said purchase agreement to Central West Irrigation Company which agreed to assume all the obligations and to perform all the covenants and undertakings of Guy C. Myers contained therein. The Power Committee also assigned to Central West Irrigation Company the contract of September 19, 1944, with Guy C. Myers and that company agreed to assume all the obligations and to perform all the covenants and undertakings of the Power Committee contained therein.

On December 26, 1944, Central West Irrigation Company entered into an agreement with Nebraska Power Company, hereinafter referred to as the "Power Contract" covering the sale of electrical energy by the Central West Irrigation Company to the Nebraska Power Company.

On December 22, 1944, the board of directors of Loup River Public Power District had adopted resolution No. 3224 and on December 26, 1944, in accordance with said resolution there was executed an assignment of the Power Contract by Central West Irrigation Company to Loup River Public Power District and also an agreement between Loup River Public Power District and Nebraska Power Company suspending the prior Power Contract between Central West and Nebraska Power. On this same date, Loup River Public Power District Eastern Division (hereinafter referred to as Loup Eastern Division), issued its sixty-day note to the Marine Midland Trust Company of New York for $15,600,000, which was transferred to the Loup River Public Power District and by that District deposited with Central West Irrigation Company. On the same date Central West Irrigation Company purchased the 970,992 shares of common stock of Nebraska Power Company owned by American Light & Power Company for

$14,421,000, and the remaining 29,008 shares of such stock for $46,012. Immediately thereafter on the same day Loup Eastern Division refunded its thirty-day note with its twelve-year revenue bonds and Central West Irrigation Company pledged with the Marine Midland Trust Company of New York all of the shares of common stock of the Nebraska Power Company.

On the same date, December 26, 1944, Central West Irrigation Company (often referred to as the Committee) entered into an agreement with Loup River Public Power District whereby Central West declared:

"the acquisition of the common stock and properties and assets of the Nebraska Power Company is for the sole purpose of transferring the ownership, operation and management of said properties and assets to public corporations and agencies of the State of Nebraska, and that the Committee will receive no profit, benefit or advantage to the members of the Committee in, by or through such acquisition and transfer, * * *".

The parties recognized by the agreement that the Peoples Power Commission law prohibited Loup from acquiring any property within the city limits of Omaha but that

"the constitutionality of said L.B. 204 (the Peoples Power Commission law) is now being contested in the courts of Nebraska, and that legislation will be necessary to effectuate the intention of the parties hereto, which intention is to cooperate in transferring the now *privately owned properties* of the Nebraska Power Company to *public ownership*. The parties hereto accordingly agree that they will cooperate in the drafting and presentation to the Legislature, and urging the passage thereof of all necessary legislation to effectuate the consummation of this agreement, it being the desire of the parties hereto that a public agency be lawfully created for the purpose of acquiring, owning and operating the electric utility services for the city of Omaha, and

that such electric utility for said City be joined with the publicly owned power system now operating in the state of Nebraska to the mutual benefit of all of the citizens and consumers of electricity in Nebraska." (Emphasis added.)

The parties provided for the transfer of the utility property lying within the City of Omaha as follows:

"Section 4. Anything to the contrary herein notwithstanding, the Committee shall not be obligated nor required hereunder to transfer the distribution facilities now or formerly owned by the Nebraska Power Company located within the metropolitan City of Omaha, and such of said properties lying without the corporate limits of said city as are not an integral part of the said properties within said city, if the Committee shall, within the term of this agreement, sell and convey said properties to a peoples power commission organized under L.B.204, passed at the 1943 Session of the Nebraska Legislature, or to the City of Omaha, or to some other public agency duly organized under the laws of the State of Nebraska for the purpose of acquiring said properties for the City of Omaha or the people residing in said City."

On December 26, 1944, following the acquisition of the common stock of Nebraska Power Company by Central West Irrigation Company, the directors of Nebraska Power Company then in office were removed and there were elected as directors Dr. B. H. Baer, Gerald E. Collins, J. E. Davidson; W. C. Fraser, a member of the firm of Crofoot, Fraser, Connolly & Stryker; Edward F. Leary, T. H. Maenner, W. W. Wenstrand, Emil E. Wolf, and D. B. Woodyard. On January 1, 1945, Woodyard resigned as a director. At the annual meeting of the corporation held on April 2, 1945, the directors above named, other than Woodyard, were re-elected and the following additional directors were added: Sidney J. Cullingham; Gould Dietz, an Omaha investor; Reed O'Hanlon, an attorney of Blair, Nebraska; Denis Radford, Jr., an insurance agent; Bernard R. Stone; and Ernest L. McLean and George H. Hunt, attorneys in the office of McLean, Southard & Hunt, of Augusta, Maine, who were counsel for the company in Maine. On April 15, 1946, McLean and Hunt resigned and no successors were appointed. The board remained as so constituted to and including December 2, 1946.

Prior to December 26, 1944, the officers of Nebraska Power Company were as follows:

| Name | Office |
| --- | --- |
| J. E. Davidson | President |
| Roy Page | Vice President & General Manager |
| F. E. Smith | Vice President |
| F. J. Moylan | Secretary-Treasurer |
| T. F. Hanley | Assistant Secretary & Assistant Treasurer |

On December 26, 1944, T. H. Maenner was elected chairman of the board of directors of said company; D. B. Woodyard was elected as a vice president; F. J. Moylan resigned as secretary and treasurer, and Edward F. Leary and Gerald E. Collins were elected to those offices, respectively. F. J. Moylan was elected as assistant secretary and assistant treasurer. The remaining officers named hereinbefore continued to hold the offices there designated. On January 1, 1945, Woodyard resigned as vice president and on January 11, 1945, Sidney J. Cullingham was elected to succeed him. At the annual meeting of the board of directors held on April 20, 1945, all of the officers were re-elected to the same offices except that W. W. Wenstrand was elected secretary in the place of Leary. Thereafter all of the officers continued to hold their respective offices, to and including December 2, 1946.

On December 26, 1944, Central West Irrigation Company paid $530,000 to Guy C.

Myers for his services in accordance with his contract with the Power Committee.

By amended articles of incorporation dated December 30, 1944, and filed in the office of the Secretary of State of Nebraska on January 3, 1945, Central West Irrigation Company changed its name to Omaha Electric Committee, Inc. Among other things the amended articles provided:

"H. The Board of Directors of the corporation shall, notwithstanding the broad powers herein granted, conduct the affairs of the corporation for the purpose of ultimately vesting in the City of Omaha, Nebraska, or in some public agency, public body or political subdivision of the State of Nebraska the ownership and operation of properties used in supplying electric energy to the inhabitants of the City of Omaha, Nebraska, and surrounding territory. Any such transfer or any transfer of stock made for the purpose of enabling such public agency, public body or political subdivision to acquire such properties shall be made for a consideration not in excess of an amount found necessary by the Board of Directors of the corporation in order to effect a retirement of all indebtedness and other obligations and preferred stock of the corporation and of corporations controlled by it, or for no consideration if no such indebtedness or preferred stock exists. If the corporation shall at the time of any such transfer own or control any properties in addition to those used in supplying electric energy to the residents of the City of Omaha and surrounding territory, it shall cause the same to be transferred or disposed of in such manner and for such consideration as may be directed by the City, public agency, public body or political subdivision of the State of Nebraska constituting the transferee under any such transfer. The consideration so received after payment of all expenses shall be paid to such transferee. When and as any public utility properties shall be held or controlled by the corporation after the retirement of all its obligations and

those of corporations controlled by it (other than current indebtedness incurred in normal operations) and preferred stock of such controlled corporations, this corporation shall prior to the transfer thereof, as hereinbefore provided, operate such properties substantially without profit and any small profit which may accrue through such operations shall be rebated to consumers from time to time, or paid to the transferee under any transfer made pursuant to the provisions of this subdivision.

"I. The affairs of the corporation shall be so managed that no profit from the operations of this corporation shall inure to any officer, director or member, and no distribution shall ever be made of any of the properties or assets of the corporation to any officer or member thereof. No money shall ever be paid to the directors or officers of the corporation for services in acting as a director or officer of corporation, except as compensation for services actually rendered, and then only to the extent approved by the majority vote of the Board of Directors of the corporation."

By a letter dated July 8, 1947, the Commissioner of Internal Revenue ruled that the Electric Committee was exempt from Federal income tax under the provisions of section 101(14) of the Internal Revenue Code and corresponding provisions of prior revenue acts.

On February 16, 1945, the Supreme Court of Nebraska handed down its decision in State ex rel. Nelson v. Butler, 145 Neb. 638, 17 N.W.2d 683, holding that the Peoples Power Commission of the City of Omaha had no valid existence.

On May 8, 1945, the Legislature of Nebraska enacted and the Governor of Nebraska approved L.B. 139, Laws of Nebr., 1945, Ch. 159, par. 1, p. 522, repealing the Peoples Power Commission Law and on the same date it enacted L.B. 297, Chapter 157, Laws of Nebraska, 1945, p. 515, amending sections 70–604, 70–609, 70–615, 70–626 and 70–670 of the Revised Statutes of Ne-

braska, 1943. Each of said acts contained an emergency clause and hence became effective immediately upon approval by the Governor. On August 29, 1945, Omaha Public Power District was organized under and in accordance with the provisions of sections 70–601 to 70–679, inclusive, of the Revised Statutes of Nebraska, 1943, as amended, and since said date has maintained its principal place of business in Omaha, Nebraska.

The first board of directors of Omaha Public Power District was appointed by the Governor of Nebraska and consisted of Roy E. Bott, Karl C. Brown, Samuel L. Cooper, David Goldman, J. M. Harding, Charles D. Saunders and Carl A. Swanson, president of Carl A. Swanson & Sons, produce dealers. Thereafter, Emil E. Wolf was elected to succeed Roy E. Bott; Dr. B. H. Baer was elected to succeed Karl C. Brown; Gerald E. Collins was elected to succeed David Goldman and T. H. Maenner was appointed to complete the unexpired term of Charles D. Saunders, who moved from Omaha. Upon the expiration of that term Frank A. McDevitt, the Omaha general agent of General American Life Insurance Co. of St. Louis, was elected as a director. Subsequently Mr. Maenner was appointed to complete the unexpired term of Carl A. Swanson, who died. Thereafter during all of the period here involved, the membership of the board of directors remained unchanged.

Following the organization of Omaha Public Power District suit was instituted in the District Court of Lancaster County, Nebraska (Louis F. Armbrust v. Wardner G. Scott et al.), questioning the constitutionality of the law under which Omaha Public Power District was organized and the lawful creation of the District. On September 18, 1946, the court entered its decree holding that L.B. 297 was not invalid or unconstitutional. No appeal was taken from said decree.

On August 6, 1943, the Supreme Court of Nebraska in State ex rel. Johnson v. Consumers Public Power District, 143 Neb. 753, 10 N.W.2d 784, 795, 152 A.L.R. 480, had held that a public power district organized under sections 70–701 et seq. of the Compiled Statutes of Nebraska, Supplement 1939 (now sections 70–601 et seq., Revised Statutes of Nebraska, 1943), was without power to engage in the business of distributing and selling power in a state other than Nebraska. Because of that decision, on October 19, 1946, Omaha Electric Committee, Inc. and Omaha Public Power District entered into an agreement, pursuant to which, on November 7, 1946, Western Iowa Power Company was organized under Chapter 491, Code of Iowa, 1946, I.C.A., and Omaha Electric Committee, Inc., purchased for $50,000 all of its authorized stock.

The first board of directors of Western Iowa Power Company consisted of Dr. B. H. Baer, Gerald E. Collins, Sidney J. Cullingham, T. H. Maenner, Bernard R. Stone and Emil E. Wolf. No changes in said board occurred during any of the period here involved. Throughout all of said period the officers of said company were Sidney J. Cullingham, president; Dr. Baer, vice president; and Bernard R. Stone, secretary and treasurer.

On December 1, 1946, Omaha Electric Committee, Inc., borrowed from Guaranty Trust Company of New York for one day the sum of $27,700,000, which it immediately contributed to the capital of Nebraska Power Company. That company thereupon retired its outstanding preferred stock, bonds, and debentures for amounts as follows:

| | |
|---|---|
| 51,962 shares, 7% preferred stock | $ 5,806,753.50 |
| 22,561 shares, 6% preferred stock | 2,515,551.50 |
| $16,500,000 First Mortgage 4½% bonds and interest thereon | 17,298,270.00 |
| $3,500,000 6% debentures and interest thereon | 4,060,000.00 |
| | $29,680,575.00 |

On December 2, 1946, Omaha Electric Committee, Inc., transferred to Western Iowa Power Company 77,000 shares of the common stock of Nebraska Power Company in exchange for $3,350,000 principal amount of bonds of Western Iowa Power

Company. On the same day the Iowa properties of Nebraska Power Company except those in the Carter Lake area (an isolated area west of the Missouri River constituting approximately three or four square miles and serving about 375 of the total 94,700 customers served by Omaha Public Power District) were transferred by Nebraska Power Company to Western Iowa Power Company in redemption and cancellation of the 77,000 shares of the Nebraska Power Company common stock then owned by Western Iowa Power Company.

On the same date, December 2, 1946, Omaha Public Power District obtained from Guaranty Trust Company of New York a temporary loan which it later funded with electric revenue bonds, in the sum of $42,000,000. Omaha Electric Committee, Inc., thereupon sold the remaining 923,000 shares of the common stock of Nebraska Power Company to Omaha Public Power District for $42,000,000. Of that amount, there was paid to The Marine Midland Trust Company of New York the sum of $13,503,511.68, which, with funds then held by said Trust Company for the account of Loup River Public Power District, was sufficient to retire the outstanding bonds of Loup Eastern Division. With the remaining $28,496,488.32, Omaha Electric Committee, Inc., repaid its $27,700,000 loan from Guaranty Trust Company of New York, paid $600,000 to John Nuveen & Co. and B. J. VanIngen & Co., Inc., in lieu of financing fees, paid attorneys' fees of $50,000, and refunded $146,488.32 to Omaha Public Power District.

On the same date, December 2, 1946, Omaha Electric Committee, Inc. and Omaha Public Power District executed a written instrument providing for the transfer of the properties of the Omaha Electric Committee to the Omaha Public Power District.

On December 2, 1946, after the execution of the instrument referred to in the preceding paragraph, Nebraska Power Company transferred to Omaha Public Power District in redemption and cancellation of all except 13 shares of its outstanding common stock, all of the remaining assets of Nebraska Power Company except $25,000 and claims for refund of "income taxes,

excess profits taxes or any other taxes". Omaha Public Power District then owned and does now own the 13 shares of the common stock of Nebraska Power Company which remained outstanding, constituting all of the outstanding stock of said company.

By letter and agreement dated October 29, 1947, Western Iowa Power Company gave to the Mayor of Council Bluffs, Iowa, an option for that city to acquire the properties of said company. This option was revised by letter and agreement dated November 22, 1947. The new franchise proposed in said revised option was submitted to the people of Council Bluffs in a special election held on January 6, 1948, and was defeated. Prior to May 1, 1948, the City Council of Council Bluffs requested an extension of the option and by agreement dated May 20, 1948, the option was renewed. On August 1, 1948, that option expired without having been exercised.

A public offering upon sealed bids was thereupon made from which nine bids were received. After receiving a report on these bids from Burns & McDonnell, engineers, and after interviewing four of the bidders recommended by those engineers, it was determined that the best bid was that of Iowa Power and Light Company, a privately owned corporation organized under the laws of the State of Iowa. On December 4, 1948, that company and Omaha Electric Committee, Inc., entered into a memorandum agreement, the provisions of which were incorporated into a formal agreement executed by the same parties on February 11, 1949, for the sale to said company of all of the outstanding stock and bonds of Western Iowa Power Company for the sum of $3,430,000, increased or decreased by the amount by which the earned surplus of Western Iowa Power Company as of the closing date of the sale, as determined by Arthur Andersen & Co. and Haskins & Sells, independent accountants, exceeded or was less than its earned surplus as of September 30, 1948, and interest on said bonds from the last interest payment date to the closing date of the sale, with provision for the retention by Iowa Power and Light Company for a period of four

years of $100,000 of the purchase price for the purpose of paying any contingent liabilities.

On May 14, 1949, all of the stock and bonds of Western Iowa Power Company, title to which at that time was, and since the date of the organization of that company, had continuously been held by Omaha Electric Committee, Inc., were sold and transferred to Iowa Power and Light Company. In payment therefor Iowa Power and Light Company had deposited with Omaha Electric Committee, Inc., on December 4, 1948, the sum of $100,000, and on May 14, 1949, it paid to said company $3,230,000, and $57,552.04 of interest on the bonds, or a total of $3,287,552.04, retaining $100,000 to meet contingent liabilities as authorized in said agreement. On July 12, 1949, it was finally agreed by and between Arthur Andersen & Co. and Has-

kins & Sells that the increase in the earned surplus of Western Iowa Power Company between September 30, 1948, and May 14, 1949, was $78,564.38, and on August 8, 1949, Iowa Power and Light Company paid said sum to Omaha Public Power District. On May 18, 1953, Iowa Power and Light Company paid to Omaha Public Power District the sum of $119,175.02, representing the $100,000 retained by Iowa Power and Light Company, with interest thereon, and adjusted for expenses and differences between liabilities accrued on the balance sheet of Western Iowa Power Company as of May 14, 1949, and the amounts actually paid in discharge of such accrued liabilities.

The cash receipts and disbursements of Omaha Electric Committee, Inc., from the date of its organization to July 15, 1949, inclusive, were as follows:

### Receipts

| | | |
|---|---|---:|
| 12-26-44 | Deposit by Loup River Public Power District | $15,600,000.00 |
| 12- 1-46 | Loan from Guaranty Trust Co. of New York | 27,700,000.00 |
| 12- 2-46 | Sale of Nebraska Power Co. stock to Omaha Public Power District | 42,000,000.00 |
| 12- 4-48 | Deposit by Iowa Power & Light Co. upon purchase price of Western Iowa Power Co. securities | 100,000.00 |
| 5-14-49 | Additional payment by Iowa Power & Light Co. for said securities | 3,230,000.00 |
| | Interest on Western Iowa Power Co. bonds, five installments, including payment of $57,552.04 by Iowa Power & Light Co. upon purchase thereof | 315,302.04 |
| | Sale of envelopes and supplies | 716.63 |
| | Total Receipts | $88,946,018.67 |

### Disbursements

| | | |
|---|---|---:|
| 12-26-44 | Payments for stock of Nebraska Power Co. | $14,467,012.00 |
| 12-26-44 | Fee paid to Guy C. Myers | 530,000.00 |
| 12-26-44 | Financing charges paid to John Nuveen & Co. and B. J. VanIngen & Co., Inc. in connection with issuance of bonds of Loup Eastern Division | 300,000.00 |

| Date | Description | Amount |
|---|---|---|
| 12–26–44 | Payment to Irving Trust Co. of New York for retirement pension trust for J. E. Davidson, president of Nebraska Power Co. | 68,000.00 |
| 12–26–44 | Documentary stamps | 1,450.64 |
| 1– 7–46 | Payment to Loup River Public Power District for expenses in connection with issuance of Loup Eastern Division bonds | 16,655.08 |
| 11– 7–46 | Payment for common stock of Western Iowa Power Co. | 50,000.00 |
| 12– 1–46 | Capital contribution to Nebraska Power Co. | 27,700,000.00 |
| 12– 2–46 | Payment to Marine Midland Trust Co. in discharge of Loup Eastern Division bonds | 13,503,511.68 |
| 12– 2–46 | Repayment of loan from Guaranty Trust Co. of New York | 27,700,000.00 |
| 12– 2–46 | Payment to John Nuveen & Co. and B. J. VanIngen & Co., Inc. in lieu of financing charges | 600,000.00 |
| 12– 2–46 | Refund to Omaha Public Power District of portion of purchase price of stock of Nebraska Power Co. | 146,488.32 |
| | Payments to Marine Midland Trust Co. for administrative services as trustee under Loup Eastern Division bond indenture | 2,250.00 |
| | Payments to Allen & Reynolds Agency and Jos. W. Hicks Organization for services in publicity relative to acquisition of Nebraska Power Co.; Council Bluffs, Iowa franchise election; and solicitation of signatures for the Omaha Public Power District petition | 104,001.94 |
| | Legal fees, legal expenses, interest and miscellaneous expenses | 121,624.44 |
| | Payment over to Omaha Public Power District of interest received on Western Iowa Power Co. bonds | 315,302.04 |
| 7–15–49 | Payment to Omaha Public Power District of all remaining cash | 3,319,722.53 |
| | Total Disbursements | $88,946,018.67 |

On July 15, 1949, Omaha Electric Committee, Inc., transferred to Omaha Public Power District all of its assets.

Omaha Electric Committee, Inc. (Central West Irrigation Company), was not, during any of the period involved herein and is not now, of and by itself a political subdivision of the United States or of any state. Nebraska Power Company, Omaha Public Power District, Omaha Electric Committee, Inc. (Central West Irrigation Company), Western Iowa Power Company,

and Iowa Power and Light Company were not directly or indirectly engaged in rural electrification at any time during the period involved herein, and no other company, group, or organization was engaged in rural electrification on their behalf during such period.

During the period December 26, 1944, to December 2, 1946, inclusive, Nebraska Power Company did not decrease its schedule of rates in effect during the period from August 31, 1933, through December 26, 1944, and at all times during said period December 26, 1944, to December 2, 1946, inclusive, the prices charged by it for the electrical energy which it sold were strictly in accordance with its rate schedules.

Nebraska Power Company paid the tax imposed by Section 3411 of the Internal Revenue Code upon electrical energy sold by it during the period September 1, 1933, to April 30, 1946, inclusive, prior to June 23, 1946. No part of said tax paid with respect to electrical energy sold during the period December 26, 1944, through April 30, 1946, inclusive, was included in the claim for refund involved herein, since at the time of filing of the claim for refund involved herein, on June 23, 1950, the statutory limitation imposed by Section 3313 of the Internal Revenue Code had expired as to any tax paid prior to June 23, 1946.

The tax imposed by Section 3411 of the Internal Revenue Code had its origin in Section 616 of the Revenue Act of 1932, as amended by Section 6(a) of Public Law No. 73, 73d Congress, and as so amended it became effective on September 1, 1933. Nebraska Power Company did not at any time after August 31, 1933, increase its schedule of rates and at all times after that date the prices charged by it for the electrical energy which it sold were strictly in accordance with its rate schedules. It did not at any time after said date bill any part of the tax on electrical energy separately to its customers.

On June 23, 1950, the plaintiffs herein filed with the defendant at his office in Omaha, Nebraska, a claim for refund of the full amount of said $151,552.68 in taxes paid. On October 31, 1950, the Com-missioner of Internal Revenue mailed to Nebraska Power Company a notice rejecting said claim in full.

No part of said $151,552.68 has been paid or refunded to any of the plaintiffs by the defendant, by the United States or by any other person or persons whomsoever.

## Discussion

During the period involved in this lawsuit Section 3411 of the Internal Revenue Code, 26 U.S.C. (1946 Ed.) § 3411, provided:

"(a) There shall be imposed upon electrical energy sold for domestic or commercial consumption and not for resale a tax equivalent to 3⅓ per centum of the price for which so sold, to be paid by the vendor under such rules and regulations as the Commissioner, with the approval of the Secretary, shall prescribe. * * * 53 Stat. 3411, as amended by 55 Stat. 707."

However subsection (c) provided:

" * * * None of the provisions of this section shall apply to *publicly owned* electric and power plants, * * *." (Emphasis added.)

The issue presented for decision in this case is whether the properties of the Nebraska Power Company were "publicly owned" within the meaning of subsection (c) above during the period beginning May 1, 1946, and ending December 2, 1946.

The parties seem to argue from the assumption, and the Court is inclined to accept the assumption as correct, that "publicly owned" denotes ownership, the nature of which the Court will discuss later, by a political subdivision or governmental agency. The legal title to the properties in question was at all times material to this lawsuit held by the Omaha Electric Committee, Inc., which had formerly been the Central West Irrigation Company. This private nonprofit corporation was not a political subdivision or governmental agency of any state or of the Federal Government. Consequently, if the term "owned" as used in Section 3411(c) denotes the holding of legal title it is clear that the properties of the Nebraska Power Com-

pany were not publicly owned during the period in question.

 Counsel for petitioner argues, and meritoriously so, that ownership means the equitable or beneficial ownership and is not confined to bare legal ownership. The Court is inclined to agree and has carefully searched the record to ascertain if the equitable ownership of the properties in question was vested in a political subdivision or governmental agency of the state of Nebraska, or any other state during the period in dispute. In this connection petitioner asserts that the properties held in the name of Nebraska Power Company were clearly beneficially owned during the period December 26, 1944, to December 2, 1946, inclusive, by Loup River Public Power District, a political subdivision of the state of Nebraska. Petitioner buttresses his position by calling the Court's attention to the transactions of December 26, 1944, between the Central West Irrigation Company and the Loup River Public Power District, which transactions, petitioner contends, had the legal effect of creating a trust in the properties in question in favor of the Loup River Public Power District. The contention seems legally unsound. In State ex rel. Johnson v. Consumers Public Power District, 143 Neb. 753, 10 N.W.2d 784, 152 A.L.R. 480, the Supreme Court of Nebraska held that public power districts could not lawfully engage in the business of the sale and distribution of electric power in other states and were without power to acquire property for such purposes. Consequently, it seems to this Court that it was legally impossible for the Loup River Public Power District to hold legal or equitable or any other title to the property in question, part of which was used for the distribution of electrical energy in Iowa. By the same token, the Omaha Public Power District could not hold title to the property in question as long as part of it was used for the distribution of electrical energy in Iowa during the period involved herein. The record fails to disclose any political subdivision or governmental agency in whom the legal or equitable ownership of the Nebraska Power Company property was, or

even could have been, vested during the period involved in this case.

For the reasons stated the Court has reached the conclusion that the properties of the Nebraska Power Company were not "publicly owned" within the meaning of Section 3411(c) of the Internal Revenue Code during the period from May 1, 1946, to December 2, 1946; and that petitioner was not exempt from the tax assessed.

Counsel for the government shall prepare and submit for approval the apropriate judgment to be entered in accordance with this memorandum.