232 F.2d 805
 56-1 USTC P 9503
 OMAHA PUBLIC POWER DISTRICT, a public corporation and
political subdivision of the State of Nebraska, Western Iowa
Power Company, a corporation, Iowa Power and Light Company,
a corporation, and Omaha Electric Committee, Inc., a
corporation, Appellants,
v.
George W. O'MALLEY, Collector of Internal Revenue for the
United States Internal Revenue Collection District
of Nebraska, Appellee.
 No. 15425.
 United States Court of Appeals Eighth Circuit.
 May 3, 1956.
 
 Reece A. Gardner, Kansas City, Mo. (Raymond M. Crossman, Thomas C. Quinlan, Omaha, Neb., G. Lee Burns, Kansas City, Mo., Brown, Crossman, West, Barton & Quinlan, Omaha, Neb., and Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., on the brief), for appellants.
 Karl Schmeidler, Attorney, Department of Justice, Washington, D.C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and Robert N. Anderson, Attorneys, Washington, D.C., and Donald R. Ross, U.S. Atty., Omaha, Neb., on the brief), for appellee.
 Before SANBORN, WOODROUGH, and VAN OOSTERHOUT, Circuit Judges.
 VAN OOSTERHOUT, Circuit Judge.
 
 
 1
 This is an appeal from the judgment of the District Court dismissing plaintiffs' (appellants) complaint for recovery of federal income tax imposed upon income of the Western Iowa Power Company, hereinafter called Western Iowa. We will refer to the parties as plaintiffs and defendant. The principal plaintiff is the Omaha Public Power District, a public corporation and political subdivision of the State of Nebraska, hereinafter called Omaha District, which corporation is the owner of the rights of all of the plaintiffs to any recovery in this action. The question which arises upon this appeal is whether the income earned, reported, and paid by Western Iowa for the period from December 2, 1946, to May 14, 1949, was exempt from federal income tax under section 116(d) of the Internal Revenue Code of 1939, 26 U.S.C.A. 116(d), as income derived from a public utility and accruing to a political subdivision of a State.
 
 
 2
 The trial court adopted the facts stipulated by the parties as its findings of fact. There is no factual dispute. Omaha District is a political subdivision of the State of Nebraska. The income of Western Iowa was derived from a public utility. The stipulation sets out the long and complicated history of the creation of Omaha District and its acquisition of property. This history is set out in detail in Omaha Public Power District v. O'Malley, D.C., 114 F.Supp. 3, affirmed 8 Cir., 216 F.2d 764. For our purposes here it is sufficient to state that, pending enabling legislation and the legal test thereof, some public-spirited Omaha citizens, interested in placing the Omaha utilities under local public ownership, organized Omaha Electric Committee, Inc., a nonprofit Nebraska corporation. Omaha Electric Committee acquired all of the stock of the Nebraska Power Company which furnishes the electric service to the Omaha territory, and also to an adjoining section of Iowa. The purpose of Omaha Electric Committee was to act as a medium by which the electric system of Nebraska Power Company could be acquired and transferred to a political subdivision of the State of Nebraska. Omaha Electric Committee was bound by an agreement to transfer without profit the properties it acquired to Omaha District, and at all times recognized this obligation. Omaha District was organized in 1945, and a decree upholding its legality was entered in 1946.
 
 
 3
 The only way the Omaha utilities could be advantageously acquired was by the purchase of all of the stock of Nebraska Power Company. Since Nebraska Power Company owned some Iowa electric utilities these necessarily were included in the transaction. Because of the decision of the Nebraska Supreme Court in State ex rel. Johnson v. Consumers Public Power District, 143 Neb. 753, 10 N.W.2d 784, 152 A.L.R. 480, and the doubt that existed whether Omaha District court lawfully operate the Iowa utilities, Omaha Electric Committee and Omaha District agreed that Western Iowa, an Iowa corporation for pecuniary profit, would be organized to acquire and operate the utilities located in Iowa. Such agreement also contemplated that the Iowa assets would be sold as soon as practicable and that all proceeds of sale would be paid to or used for the benefit of Omaha District. Western Iowa operated the Iowa utilities from December 2, 1946, until May 14, 1949, and during said period reported its income for federal income tax purposes and paid the income taxes due. On May 14, 1949, Omaha Electric Committee completed the sale of all stock and bonds of Western Iowa to Iowa Power and Light Co. As part of said transaction Iowa Power and Light Co. agreed that any income tax refund that might be due in this action would be the property of Omaha District. Omaha Electric Committee recognized and carried out its obligation to transfer to Omaha District the Nebraska utilities, and also paid to or for the benefit of Omaha District the proceeds received from the sale of the Iowa properties. No dividends were paid by Western Iowa during the period involved in this action.
 
 
 4
 The trial court had jurisdiction. 28 U.S.C. § 1340. Claims for refund were filed and disallowed. All conditions precedent to the institution of this action as required by 26 U.S.C. § 3772, 1952 Edition, have been met. This court has jurisdiction. 28 U.S.C. § 1291.
 
 
 5
 Plaintiffs contend that the income of Western Iowa for the period here involved was exempt under section 116(d) of the Internal Revenue Code of 1939, which excludes from gross income, 'Income derived from any public utility or the exercise of any essential governmental function and accruing to any State, Territory, or the District of Columbia, or any political subdivision of a State or Territory * * *.'
 
 
 6
 The trial court correctly states that the sole issue involved in this case is the question of whether the income from Western Iowa accrued to Omaha District. Plaintiffs contend that the word 'accruing' in section 116(d) means 'inuring,' and that such interpretation is supported by legislative history, treasury interpretations, and by City of Galveston v. United States, 10 F.Supp. 810, 81 Ct.Cl. 371; and Jamestown & Newport Ferry Co. v. Commissioner, 1 Cir., 41 F.2d 920. The trial court rejected plaintiffs' contention, relying principally upon Bear Gulch Water Co. v. Commissioner, 9 Cir., 116 F.2d 975.
 
 
 7
 The Bear Gulch Water Co. case fully supports the trial court's decision. In that case the petitioner was a corporation engaged in the distribution of water, its income arising from the sale of water. All of petitioner's stock was owned by the Regents of the University of California, a political subdivision of that state. In denying an exemption under section 116(d) the court states, at page 977:
 
 
 8
 'The Board found: 'During 1933 petitioner did not declare any dividends, and, consequently, no income was received by the University from petitioner.' Thus it is clear that, in 1933, no part of petitioner's income accrued to Regents. For, although Regents was petitioner's sole stockholder, petitioner's income was not Regents' income and did not accrue to Regents until a dividend payable therefrom was declared by petitioner. * * *
 
 
 9
 'The Board properly refused to disregard the existence of petitioner as an entity separate and apart from Regents, for it did not appear that petitioner was Regents' alter ego, or that to recognize petitioner's separate existence would promote fraud, defeat justice or produce inequitable results. * * *'
 
 
 10
 This court had occasion to consider section 116(d) in Citizens Water Co. v. Commissioner, 8 Cir., 87 F.2d 874. There the city owned part of the stock of the Citizens Water Co., an Iowa corporation for pecuniary profit, and had certain rights pertaining to the management of said company. Dividends at fixed rates were to be paid upon out-standing stock. The city had a right to compel retirement of stock out of surplus earnings. Upon repayment of the stockholders' investment at par, plus accrued and unpaid dividends, and the assumption of the duties and obligations of the corporation, the city was entitled to take over the property. The corporation sought a refund of the income tax paid. In answer to a challenge upon the constitutionality of the tax on the income of the corporation, this court held that the right of the city to direct the use of the surplus funds and the other rights conferred upon the city fell far short of ownership, and that the constitutional right existed to tax the corporate income of the water company. Relative to the interpretation of section 116(d), the court states, at page 878:
 
 
 11
 '* * * The contention here is that the act exempts the entire income, including that going to the stockholders.
 
 
 12
 'It is unnecessary here to construe section 116(d) further than to determine that the section very clearly expresses the limitation that only the income accruing to the city is exempt and that the income going to private parties is not.'
 
 
 13
 The right, if any, on the part of the city to a refund under section 116(d)(1) was not reached for adjudication.
 
 
 14
 City of Burlington v. United States, 8 Cir., 148 F.2d 887, arises out of the same facts as the case last discussed, and involves an effort on the part of the city to recover all income taxes paid by Citizens Water Co., except for tax paid on that part of income paid as dividends to private stockholders. Such claim is made pursuant to section 116(d)(1) which varies somewhat from section 116(d), but permits a recovery only on that part of the income that accrues directly to or for the use of a political subdivision. This court denied relief, stating at page 890:
 
 
 15
 'This statute is applicable only if 'a part of such proceeds for the taxable year would accrue directly to or for the use of' the City. Section 116(d)(1). Since, as has been determined, no earnings of the company (except dividends) accrued directly to or for the use of the City, it follows that this statute does not apply.
 
 
 16
 'The City of Galveston case, supra, is distinguishable in that there the claim for refund under Section 116(d)(1) was based upon the accrual of income to the City from ownership of property and not merely stockholding. See Bear Gulch Water Co. v. Commissioner of Internal Revenue, 9 Cir., 116 F.2d 975, wherein the entire stock of the utility was owned by a state university and the court held that no income was received by the university, since although the university was sole stockholder, the corporation's income was not the university's income.'
 
 
 17
 Plaintiffs assert that in the Bear Gulch and the Burlington cases, hereinabove discussed, the legislative history of section 116(d) was not adequately considered. At the invitation of the court, both parties have filed supplemental briefs discussing the consideration given the legislative history of section 116(d) in the Bear Gulch and Burlington cases.
 
 
 18
 We have examined the claims of the respective parties relating to the legislative history of section 116(d) and find nothing substantial in such history to support the plaintiffs' construction of the word 'accruing.' Plaintiffs urge the fact that Article 68 of Treasury Regulations 33, Revised 1918, provides that among the corporations exempt from tax without condition are public utilities whose income inures to the benefit of any State, Territory, or political subdivision thereof. Plaintiffs stress that in the 1918 Regulations the word 'inures' is used rather than 'accrues.' However, such regulation remained in effect only one year, and similar language does not appear in either prior or subsequent regulations. The transaction here involved arose long after the 1918 Regulations had been superseded. The fact that the 1918 Regulations used the word 'inures' has little bearing upon the construction of the statute. Plaintiff sets out the following definitions of the word 'accrue' from Webster's New International Dictionary, Second Edition:
 
 
 19
 '1. Law. To come into existence as an enforceable claim; to vest as a right; as, a cause of action has accrued when the right to sue has become vested.
 
 
 20
 '2. To come by way of increase or advantage; also, to arise or spring as a growth or result;-- usually with to; as, advantages accruing to society from the freedom of the press.'
 
 
 21
 Plaintiffs urge that Congress had in mind definition No. 2 set out above. We do not agree. It seems more reasonable to us that in framing statutes Congress had in mind definition No. 1 above, the legal definition of the word 'accrue.' The cases hereinabove cited strongly support such a conclusion.
 
 
 22
 Moreover, section 116(d) grants an exemption, and as a general rule statutes granting exemptions are to be strictly construed. United States v. Stewart, 311 U.S. 60, 71, 61 S.Ct. 102, 85 L.Ed. 40; Omaha Public Power District v. O'Malley, supra.
 
 
 23
 No dividend was paid by Western Iowa during the period involved in this litigation, nor was any such dividend declared. Consequently, Omaha District acquired no vested right or enforceable claim with reference to any of the income earned by Western Iowa during the period here involved. No part of the income of Western Iowa accrued to Omaha District.
 
 
 24
 The defendant, as an additional reason for affirmance, urges that a corporation is an entity entirely separate and distinct from its stockholders. This issue was fully considered by this court in Omaha Public Power District v. O'Malley, supra. That case involves the identical corporate structure that we are considering here. An excise tax exemption was sought. The question considered was whether Western Iowa was publicly owned. This court held that it was not, quoting from Moline Properties, Inc., v. Commissioner, 319 U.S. 436, 438-439, 63 S.Ct. 1132, 1134, 87 L.Ed. 1499, as follows:
 
 
 25
 'The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. (Cases cited.) In Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399, this Court appraised the relation between a corporation and its sole stockholder and held taxable to the corporation a profit on a sale to its stockholder. This was because the taxpayer had adopted the corporate form for purposes of his own. The choice of the advantages of incorporation to do business, it was held, required the acceptances of the tax disadvantages.'
 
 
 26
 During the period involved in our present case, Western Iowa was operating as an ordinary business corporation for the purpose of making profits. It was an entity entirely separate and distinct from its sole stockholder, Omaha Electric Committee, and the beneficial owner of its stock, Omaha District. As a profit-making corporation, Western Iowa must bear its tax burden. The stipulation of the parties provides in part:
 
 
 27
 '* * * If during any of said periods the net income of Western Iowa was not exempt from tax under said section (116(d)), none of the plaintiffs is entitled to a refund of any portion of the amounts of Federal income tax or interest paid for any period in which such net income was not so exempt.'
 
 
 28
 We are convinced that the income of Western Iowa was not exempt from federal income taxation. It cannot possibly be demonstrated that Western Iowa was a political subdivision of any State. The corporation was an entirely separate and distinct entity from its stockholder.
 
 
 29
 The judgment appealed from is affirmed.