STATE, EX REL. WALTER R. JOHNSON, ATTORNEY GENERAL, RELATOR, v. CONSUMERS PUBLIC POWER DISTRICT, RESPONDENT: CITY OF SIDNEY ET AL., INTERVENERS.

10 N. W. (2d) 784

FILED AUGUST 6, 1943. No. 31433.

*Walter R. Johnson, Attorney General,* and *Edwin Vail,* for relator.

*George A. Lee,* for respondent.

*P. J. Heaton, L. J. TePoel, Bern R. Coulter, Robert J. Bulger, Edwin D. Crites, Morrow & Miller,* for *interveners.*

*Flansburg & Flansburg, amicus curiæ.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

CHAPPELL, J.

This is an original proceeding in the nature of *quo warranto* instituted by the attorney general by direction of the governor. The action is to determine by what warrant of law respondent, a public corporation, organized August 5, 1939, under the provisions of art. 7, ch. 70, Comp. St. Supp. 1939, exercises possession, ownership and control of the interconnected, integrated electric system known as western division of the Western Public Service Company, including certain ice and steam heating plants, and to require respondent to cease and desist therefrom and be ousted and excluded from the exercise of any relative pretended rights, franchises or privileges. Petitions in intervention adopting substantially the same formulae of allegations and prayers for relief as those set forth in the amended information were filed by the cities of Bridgeport, Chadron, Sidney, and Scottsbluff by permission of this court.

Respondent filed demurrers to relator's amended information and to the petitions in intervention. We held in a former opinion in this case (142 Neb. 114, 5 N. W. (2d) 202), that *quo warranto* is a civil action both in substance and in form, as defined by our civil code, and that demurrer is a proper pleading. We have long recognized an applicable rule that demurrer admits only facts that are well pleaded and not conclusions of either law or fact. See *American Water-Works Co. v. State,* 46 Neb. 194, 64 N. W. 711; *Griffin v. Gass,* 133 Neb. 56, 274 N. W. 193.

Preliminary to discussion of the questions involved we call attention to certain facts appearing in the amended information and petitions in intervention. In December, 1941, respondent contracted to purchase, and since a short time thereafter has owned and operated, all of the electric properties of the Western Public Service Company. These properties include electric facilities in the intervener cities

and many other cities and towns, which comprise what was formerly known as the western division of the Western Public Service Company. There are other divisions of the Western Public Service Company comprising other such facilities, the lawful purchase, ownership, possession and control of which relator and interveners concede and do not contest or challenge in this action. It is sought only to oust and evict respondent from franchises asserted in that part or portion of the property known as the western division. The federal power plants at Guernsey and Lingle, Wyoming, are the only plant or plants owned by the United States of America referred to in the pleadings as being involved in section 70-713, Comp. St. Supp. 1939.

Since there are only questions of law presented, we will not recite at length the allegations of the amended information or petitions in intervention. Suffice it to say that discerning examination discloses three reasons or grounds for the prayers thereof, to wit: 1. That purchase by respondent of the western division including intervener cities and other towns therein was prohibited by the last sentence of section 70-713, Comp. St. Supp. 1939, and that purchase of all the common stock of Western Public Service Company by respondent was *ultra vires,* illegal, without statutory authority, and in violation of section 1, art. XI of our state Constitution. 2. That the purchase by respondent of certain ice manufacturing equipment and steam heating plants in Nebraska and a small portion of interconnected and integrated electrical transmission lines in South Dakota, as a part of the properties of the Western Public Service Company, were *ultra vires,* illegal, and without statutory authority. 3. That respondent violated certain agreements between Western Public Service Company and certain named cities, whereby the cities had an option, upon 90 days' notice of a proposed sale, to purchase and take over from Western Public Service Company certain electric facilities within their own borders; and that section 70-713, Comp. St. Supp. 1939, required respondent to assume all municipal contractual obligations and pay certain mu-

nicipal bonds of Sidney, Grant and Republican City, guaranteed contractually by Western Public Service Company, but that respondent in violation thereof terminated such guaranties without notice to or the consent of such cities, and in so far as is known, or it is able to be ascertained, has made no provision to fulfill such obligations.

Demurrers of respondent, in so far as they are important here, contend that the amended information and petitions in intervention do not plead facts sufficient to constitute a cause of action in *quo warranto;* that *quo warranto* will not lie because there are adequate remedies at law and in equity, and that so much of section 70-713, Comp. St. Supp. 1939, as is referred to and relied upon by relator and interveners, to wit, the last sentence thereof, is unconstitutional for the reason that it is special, local, and class legislation, which freezes the class.

Original jurisdiction in *quo warranto* is vested in this court by section 2, art. V of our Constitution. Sections 20-21,112 to 20-21,139, inclusive, Comp. St. 1929, constitute the only statutory provisions applicable to the subject. Section 20-21,112 reads in part: "An information may be filed against any person * * * if, being incorporated, they * * * *exercise powers not conferred by law."* (Italics supplied.) The purpose of the present action, therefore, is to test the existence of powers conferred upon a public corporation. The only question before the court in such a case is whether the corporation has in fact the power which it assumes.

"When a corporation is organized under a general enabling act, its charter consists of the provisions of the existing state constitution, the particular statute under which it is formed and all other general laws which are made applicable to corporations formed thereunder, and of the articles of association or incorporation filed thereunder, or the charter or certificate of incorporation granted by the court or officer in compliance with its terms; and its powers, rights, duties, and liabilities are determined accordingly." 14 C. J. 117, sec. 108. If a public corporation usurps or ex-

ercises powers not conferred upon it by law, *quo warranto* is the appropriate remedy to oust it from the exercise thereof, without affecting in any other manner the corporate franchise, but it is only authorized and available as a remedy where the franchise is exercised in the absence of the vital element of power. See *State v. City of Lyons,* 31 Ia. 432; 5 Fletcher, Cyc. Corp. (Perm. ed.) 806, sec. 2332; 2 Bailey, Habeas Corpus, 1325, sec. 347.

That part of section 70-713, Comp. St. Supp. 1939, involved, reads: "Provided, that no such district shall have the power to construct, lease, purchase or otherwise acquire any electric light or power plant or system or any part thereof, within the boundaries of any city or village in said state, for the purpose of supplying said city or village, or the inhabitants thereof, with electrical energy, if said city or village *has been supplied for one year immediately prior to the passage and approval of this Act,* with electrical energy which was produced in a plant or plants owned by the United States of America, *except* that this provision shall not apply to any city or village supplied with fifteen per cent. or less of said electrical energy produced in said plant or plants and *used* by said city or village *during said year.*" (Italics supplied.) If this prohibition in the statute is unconstitutional, then the remaining parts of section 70-713 and other sections *in pari materia* confer powers of purchase upon respondent.

Relator and interveners make able argument orally and in the briefs that respondent is estopped to question the constitutionality of the section involved or any part thereof, having voluntarily accepted all the provisions of the statute existent at the time of its organization, as its charter. In this connection, relator first contends that the creative public power district act and the petition thereunder for the creation of respondent district provided that the district, if the creation thereof is permitted by the department of roads and irrigation, will be subject to the act and *amendments thereto,* and that where a corporation has accepted benefits under a statute it will be estopped from

questioning the constitutionality of other provisions of the same act imposing burdens upon the corporation. It is obvious at once that respondent, being a public corporation created by the legislature, is subject to all the restrictions, limitations and burdens now or hereafter constitutionally imposed upon it, and addition of the words "as amended" in the statute and in the petition for creation of the district add no force to this fact.

With relation to estoppel, relator and interveners rely upon a rule stated in 14a C. J. 269, sec. 2117, that, "Where a corporation accepts a charter, it takes it *cum onere* and must enjoy it subject to the conditions named therein, or not enjoy it at all." However, we find in the same citation a further admonition, "The general rule, however, is that a prohibition proviso, exception, or reservation in a charter should be so construed as not to defeat the grant, if such a construction is possible."

The question of whether respondent has accepted benefits under the other provisions of the statute which estop it from questioning the constitutionality of the last sentence thereof, depends primarily upon its construction and the applicable law of estoppel. Estoppel is most frequently applied in cases involving constitutional law when persons in some manner partake of advantages under statutes. There is authority to the effect that one who voluntarily proceeds under a statute and claims benefits thereby conferred, will not be heard to question constitutionality in order to avoid resulting burdens. 11 Am. Jur. 767, sec. 123. But this general doctrine is not applied solely on technicalities. It must rest upon substantial grounds of prejudice or change of position. *Ashwander v. Tennessee Valley Authority*, 297 U. S. 288. Where no available right is parted with and no injury suffered there can be no estoppel, and, *a fortiori*, an act clearly beneficial to the party who sets up the estoppel cannot be relied on. 21 C. J. 1137; *Haschenberger v. Dennis*, 118 Neb. 411, 225 N. W. 25. Estoppel is without application where no injury resulted to any one except the party against whom the estoppel is claimed. 21 C. J. 1208. "Es-

toppel must be reciprocal and mutual and is founded on the idea that the acts of the party estopped must result in injury to the other party and, generally, that it would be a fraud if the right asserted be maintained." *Furstenberg v. Omaha & C. B. Street Ry. Co.*, 132 Neb. 562, 272 N. W. 756.

The general principles as to waiver and estoppel in their application to cases involving constitutional law, are subject to the important limitation that an estoppel does not necessarily extend to all the details of the statute. 11 Am. Jur. 770, sec. 124. "The fact that one would be estopped to challenge the constitutionality of a particular provision of a statute is no bar to such a challenge as to an independent and separable provision of the same act, * * * ." 16 C. J. S. 186, sec. 89. See, also, 16 C. J. S. 193, sec. 90; 12 C. J. 772; *South Carolina & W. Ry. v. Ellen*, 95 S. Car. 68, 78 S. E. 963. The mere fact that a corporation is organized under a statute does not estop it to deny the constitutionality of a provision of the statute which constitutes a distinct, separable, legislative enactment, the elimination of which would leave in full force and effect the provisions under which the corporation was organized. 16 C. J. S. 189, sec. 90; 12 C. J. 771; *Morse v. Metropolitan S. S. Co.*, 88 N. J. Eq. 325, 102 Atl. 524; *Petition of Philadelphia, M. & S. Street Ry. Co.*, 203 Pa. St. 354, 53 Atl. 191.

*Mojave River Irrigation District v. Superior Court*, 202 Cal. 717, 262 Pac. 724, is in many respects similar to the case at bar. In that case the court said, in part: "We do not think that the principle of estoppel can be so far applied as to prevent a party who may be entitled to the benefits to be obtained by application to an administrative board or officer from asserting in a court of justice that other and severable portions of the law under which he makes such application and receives such benefit, and which impair his full enjoyment thereof, are void because violative of the Constitution; * * * ." See, also, *Van Camp Sea Food Co. v. Newbert*, 76 Cal. App. 445, 244 Pac. 946; *People v. Coler*, 166 N. Y. 1, 59 N. E. 716.

This court said in *State v. Stuht*, 52 Neb. 209, 71 N. W.

941: "If a portion of a legislative act is unconstitutional and it can be separated from other portions of the act and the latter enforced independent of the former, and it further appears that the unconstitutional part did not constitute such an inducement to the passage of the other parts of the law that they would not have been passed without it, the former may be rejected and the latter upheld.

"The same rule obtains in relation to parts of the sections of a statute, and that which is unconstitutional may, under the operation of the foregoing rule, be rejected from a section or sections of a law and what remains be sustained, unless they are inseparably connected in substance." See, also, *Nelsen v. Tilley,* 137 Neb. 327, 289 N. W. 388.

Section 70-715, Comp. St. Supp. 1939, provides: "If any clause, sentence, paragraph or part of this act (Comp. St. Supp. 1939, 70-701 to 70-715) shall for any reason be adjudged to be invalid, by any court of competent jurisdiction, such judgment shall not affect, impair or invalidate the remainder of this Act, but shall be confined in its operation to the clause, sentence, paragraph, or part thereof directly involved in the controversy in which such judgment shall have been rendered." This section is a declaration of assurance to courts that such separate provisions were not the inducement for passage of the other provisions of the act and creates a presumption of separability which is overcome only when no inseparability is evident or where there is a clear probability that with the provisions eliminated the legislature would not have adopted the remaining provisions. For a discussion of these questions and the elements which must be considered in the decision thereof, see *State v. Hall,* 129 Neb. 669, 262 N. W. 835; 1 Cooley, Constitutional Limitations (8th ed.) 359.

We have given careful consideration to a study of the act itself and examined the Nebraska Legislative Journal of 1939, p. 986, which discloses that the prohibition involved was considered separately by the legislature. By amendment it was lifted in its entirety from the body of the act, placed separably at the end thereof, and so adopted with-

out a negative vote. We conclude that it is separable from the other provisions of the section; and that its constitutionality can be decided without passing upon the constitutionality of the whole act or the other separate provisions thereof.

. Under these circumstances respondent has not in its organization or thereafter sought to beneficially invoke any part of the provision involved or otherwise received any benefit therefrom. Its elimination will leave in full force and effect the provisions under which respondent was organized. We find no allegations in the amended information or interveners' petitions showing any disadvantage or damage to the state or any of its subdivisions, or cities or federal plants involved, resulting from invocation of this provision by the respondent which would justify the application of any theory of waiver or estoppel. Respondent is within the class affected by the legislation, may question its validity, and is entitled to the constitutional shield of courts.

In argument upon the question of constitutionality of the provision involved, relator and interveners contend that it is poorly worded and ambiguous. They reason that it is not unconstitutional, as claimed by respondent, because it applies not only to individual plants which may be located in whole or in part within the boundaries of any city or village, but also to *any system any part whereof* may be located within any city or village. If this be true, the prohibition applies to all the western division of Western Public Service Company and all the cities and villages therein, as they are all integrated and interconnected. If relator's and interveners' contentions are correct, the exception means nothing. Certainly in attempting to fix the public power status of a large part of the state comprising very many cities and towns, for all the future, dependent only upon the past, our legislature never intended to arrive at such an illogical and meaningless result.

We conclude that the act is clear and unambiguous. In simple language of our own it provides, in substance, that

if any city or village has been supplied with its electrical energy by a plant or plants owned by the United States of America *for one year immediately prior to the passage and approval of the act,* then the purchase by respondent of said city or village plant or system or any part thereof within its boundaries is prohibited, but it is not prohibited if any such city or village was thus supplied with only 15% or less of the electrical energy used by it *during said year.*

This is the only construction that can give any force and effect to both the prohibition and the exception. Bearing this in mind, we find, upon examination of the allegations of the amended information and petitions in intervention, that Scottsbluff, Nebraska, is the only city in the western division which during the year immediately prior to the passage of the act, purchased more than 15% of the electricity used by it from the plant or plants owned by the United States of America. Scottsbluff is the only city, and there are many others, in the whole western division which is within the prohibition. All others come within the exception. Its status, as well as all the other cities therein and in the state of Nebraska, is thus frozen for all time, past, present, and future.

In view of this construction, does the provision involved have constitutional validity? Upon this question we have made diligent search and have found comparable and compelling precedent.

*In re Elm Street in City of New York,* 246 N. Y. 72, 158 N. E. 24, involved an act of the New York legislature which provided that where an award for damages in condemnation proceedings *had been within one year last past* adjudged barred by any statute of limitations, such award might be enforced notwithstanding the bar. The New York Court of Appeals unanimously held this statute to be unconstitutional. It bears striking similarity to the statute involved in the case at bar. We quote appropriate parts of the able opinion: "The act is general 'in its terms' to the extent that it applies to any city where the prescribed conditions are fulfilled. It is general to that extent 'in its ef-

fect.' Even so, the question remains whether the conditions are so circumscribed and narrow that the class subjected to the statute is one in name and nothing else. * * * It is not enough that such a judgment has been rendered; it must have been rendered *within one year last past.* A claim upon an award might have been barred by the delay of a single day beyond the statutory term. There would be no revival of its life unless the bar had been adjudged within the year. It might have been barred under a judgment rendered a day earlier than the year or a day later. There would be no revival then. Out of all time, past and future, a single year is selected. * * * Anything not condemned within that lucky year * * * is to be governed by existing law. We close our eyes to realities if we do not see in this act the marks of legislation that is special and local in terms and in effect. * * * An act is not general when the class established by its provisions is at once so narrow and so arbitrary that duplication of its content is to be ranked as an unexpected freak of chance, a turn of the wheel of fortune defying probabilities." (Italics supplied.) In *State v. Kelso,* 92 Neb. 628, 139 N. W. 226, our own court said: "The rule appears to be settled by an almost unbroken line of decisions that a classification which limits the application of the law to present condition, and leaves no room or opportunity for an increase in the numbers of the class by future growth or development, is special, and a violation of the clause of the constitution above quoted (now art. III, sec. 18, Neb. Const.)" See, also, *State v. Scott,* 70 Neb. 685, 100 N. W. 812; *State v. Hall, supra; Axberg v. City of Lincoln,* 141 Neb. 55, 2 N. W. (2d) 613; *State v. Turner,* 141 Neb. 556, 4 N. W. (2d) 302; *Steinacher v. Swanson,* 131 Neb. 439, 268 N. W. 317; *State v. Gering Irrigation District,* 114 Neb. 329, 207 N. W. 525. This court can only decide that the last sentence in section 70-713, Comp. St. Supp. 1939, is local, special, and class legislation, which freezes the class both in its terms and in its effect, and is unconstitutional. In the absence of estoppel, only the provisions of the franchise or charter which are legally enforceable will

control the parties. *Morse v. Metropolitan S. S. Co., supra.*

The amended information and petitions in intervention allege, in substance, that respondent unlawfully purchased all the common stock of Western Public Service Company, and upon receipt thereof elected its own officers, and after the transfer of all the assets by deed and other conveyances to respondent, immediately dissolved the Western Public Service Company corporation and surrendered its corporate charter. Contention is made that respondent not only lacked the power, but was prohibited by section 1, art. XI of our Constitution from purchasing the stock of a private corporation. These allegations do not state a cause of action in *quo warranto.*

Section 70-706, Comp. St. Supp. 1939, gives a public power district "all the usual powers of a corporation for public purposes;" it "may purchase, hold, sell and lease personal property and real estate reasonably necessary for the conduct of its business;" it is authorized to "enter into any kind of contract or arrangement with any person, firm, corporation;" and "for any of the purposes above mentioned or for or incident to the exercise of any one or more of the foregoing powers." Section 70-712, Comp. St. Supp. 1939, provides, in part, that whenever any public power district "shall * * * acquire by purchase, lease, or otherwise, any electric distribution system * * * (or) shall purchase or acquire the plant or property of an existing privately owned public utility * * * ." Section 70-713, Comp. St. Supp. 1939, reads in part: "In the event that any such district shall lease, purchase or acquire *in any manner* the generating plant, distribution system *or other property* of an existing utility * * * ". (Italics supplied.) We observe at once the powers of purchase thereby conferred. They are not confined to any specific statutory method or manner of their exercise. *"Quo warranto* under our statute * * * is intended to prevent the exercise of powers that are not conferred by law, and is not ordinarily available to regulate the manner of exercising those powers." *State v. Drainage District,* 100 Neb. 625, 160 N. W. 997. See, also,

*State v. Scott, supra; State v. Lancaster County Rural Public Power District,* 130 Neb. 677, 266 N. W. 591. When a corporation lawfully possesses a certain power, the irregular or improper exercise thereof is not ground for proceedings in the nature of *quo warranto.* 51 C. J. 321, sec. 17. See, also, 6 McQuillin, Municipal Corporations (2d ed.) sec. 2696. The general rule is that *quo warranto* will not lie for a mere irregular exercise of a conferred power although such irregularity may be sufficient when tested by other remedies to vitiate or render void the act done. If the power attaches the manner of its exercise cannot be challenged by information in *quo warranto.* Nor is it within the legitimate scope of the relief afforded by such proceedings to declare null and void what may have been done but only to affirm or adjudge as unauthorized the franchise or power which may have been, with or without color of right, unlawfully exercised. *State v. City of Lyons, supra.*

Section 1, art. XI of our Constitution provides: "No city, county, town, precinct, municipality, or other subdivision of the state, shall ever become a subscriber to the capital stock, or owner of such stock, or any portion or interest therein of any railroad, or private corporation, or association." Section 70-702, Comp. St. Supp. 1939, reads in part: "A district * * * when so created shall be a public corporation and political subdivision of this state * * * ." Relator and interveners contend, but without citing applicable authority, that since respondent is a political subdivision of the state, purchase of the common stock of Western Public Service Company was void *ab initio.* Even if respondent is a political subdivision of the state, which we do not decide in this opinion, section 1, art. XI of our Constitution has no application under the circumstances. This provision of our Constitution must be construed with reference to the evils it was intended to correct or prevent. It was intended to prohibit any subdivision of the state from entering into private business by being associated as a stockholder, or by being a partner, or a part owner, in a private business venture or enterprise.

In *Long v. Mayo*, 271 Ky. 192, 111 S. W. (2d) 633, it was sought to enjoin the commissioner of highways and other public officials of Kentucky from issuing $885,000 par value of bridge revenue bonds and purchasing the capital stock of a private bridge company with the proceeds. In its opinion the court said, in part: "The purpose of section 177 of the Constitution in prohibiting the commonwealth from owning stock in, or from making donations to, a corporation was to prohibit the commonwealth from entering into private business by becoming associated as a stockholder, or by being a partner, or a part owner in a private business venture. It was never intended by that section of the Constitution that the commonwealth could not acquire property for a public use." Likewise, in *People v. Kelly*, 76 N. Y. 475, the court said in part: "It was not the purpose or effect of the act, to make the city of New York a stockholder in the bridge company, or to cause it to loan any money, or credit to such company. It was the purpose of the act to extinguish the company, and vest all its property in the two cities for a public purpose. * * * All the money they paid for stock or upon the debts of the company, was simply in furtherance of the purpose to vest the property of the bridge in the two cities, and it was not paid to aid the company, or to make the cities stockholders therein. The effect was to be the dissolution of the company, and the transfer of its property." See, also, 1 McQuillin, Municipal Corporations (2d ed.) sec. 206; *Wheeler v. Philadelphia*, 77 Pa. St. 338.

Section 1, article XI of our Constitution was never intended to prohibit a purchase by a subdivision of the state of all the capital stock of a corporation solely for the purpose of lawfully acquiring the physical property of such corporation for a public use, constitutionally defined and lawfully authorized by the legislature.

The amended information alleges in substance that Western Public Service Company owned and operated in five different cities in Nebraska plants for the manufacture, distribution and sale of ice, and that they also owned and op-

erated in three different communities in Nebraska steam heating systems with pipes and conveyors and necessary equipment for the providing, furnishing and selling of steam for heating purposes to the inhabitants of such communities, together with other equipment not used or useful to the operation of a business of manufacturing and selling electricity, all of which were not properties which respondent had authority to purchase when it acquired all the common stock of Western Public Service Company, and that the *purchase, attempted purchase,* or *acquisition* thereof by respondent was *ultra vires* and beyond its statutory powers. These allegations do not state a cause of action in *quo warranto.*

We have heretofore called attention to the powers of purchase conferred upon respondent by sections 70-706, 70-712, 70-713, Comp. St. Supp. 1939. These ice and steam facilities are integral parts of and inseparable from the physical plants and properties purchased by respondent from Western Public Service Company. Only the question of respondent's power to purchase and acquire them is involved. Whether respondent has the power to sell excess steam for heating purposes and the power to engage in the separate business of selling ice, are not issues presented for decision by this court. Under these circumstances we must apply the rule that, *quo warranto* will not lie to prevent a public corporation from exercising a power conferred upon it by law even though the power is exercised in an irregular and improper manner, nor to test the validity of a contract which is a mere incident to the execution of a power conferred. See 6 McQuillin, Municipal Corporations (2d ed.) sec. 2696, and other authorities heretofore cited.

The amended information further alleges, in substance, that Western Public Service Company owned and operated transmission lines and other electrical equipment located outside of Nebraska but interconnected with its properties in Nebraska, for the furnishing and selling of electrical energy in communities outside of Nebraska and in South Dakota, all of which were not properties which respondent

had authority to purchase when it acquired all the common stock of Western Public Service Company, and that such *purchase,* or *attempted purchase,* or *acquisition* was *ultra vires* and beyond statutory powers. There are no allegations of fact setting forth the objects and purposes of the alleged acquisition or the potential use of the properties thereafter. The use and purposes for which the property can be devoted determine the power or lack of power to purchase or acquire such property. We are unable to determine from these allegations whether respondent purchased the interconnected transmission lines in South Dakota for the purpose of engaging in the distribution and sale of electric power in South Dakota, or for the purpose of acquiring property necessary for its maintenance and business and to enable it to carry on its main purpose in Nebraska. Unusually broad powers of purchase have been conferred upon respondent by the sections heretofore referred to. Respondent is a public corporation created by legislative act to provide public power to the people of the state in a proprietary capacity, and as such is subject to all restrictions, limitations, and burdens now or hereafter constitutionally imposed by law. From sections 70-601 to and including 70-717, Comp. St. Supp. 1939, we find the words "in this state" used many times in connection with powers conferred. The rule is that, "The extent of the authority conferred by a franchise is measured by the language used, * * * ." 29 C. J. S. 522, sec. 15. " * * * a corporation cannot act or contract outside the state of its creation unless the power so to do is conferred by its charter; but this is not to be taken to mean that such power must be conferred expressly, for the power is implied, unless expressly or impliedly excluded by the charter or by general law. Under charter or statutory provisions, however, a corporation may be expressly or impliedly prohibited from doing business, making contracts, or doing other acts beyond the limits of the state, or its right to act beyond the limits of the state may be regulated * * * ." 18 C. J. S. 588, sec. 178 (2). "It seems clear that an express proviso

that a corporation shall not do certain acts is no stronger than the failure to give authority, express or implied, to do them, for powers not granted either expressly or impliedly, are impliedly prohibited." 14a C. J. 251, sec. 2079. We are convinced that the legislature never intended that respondent could lawfully engage in the business of the sale and distribution of electric power in other states. Any other construction would of necessity be judicial legislation. We conclude that the purchase of this property for any such purposes would be the exercise of powers not conferred by law.

Other rules of law applicable to the circumstances are: "Companies chartered for the purpose of supplying the public with electricity * * * have such lawful rights and powers as are clearly and expressly granted, together with such implied * * * powers as are reasonably * * * necessary to enable them to exercise those expressly conferred, and to enable them to accomplish the objects of their creation. All rights and powers not thus granted are withheld." 29 C. J. S. 521, sec. 15. See, also, 14a C. J. 252, sec. 2084, and 269, sec. 2119. "Where a corporation is manifestly intended for local objects only and its capacities are limited to a particular place, it will be presumed that the powers conferred on it were intended to be exercised only within the limits of such place, and it cannot exercise them in other jurisdictions; but even a purely local corporation, required by its charter to carry on its main purpose in a particular place, may carry on in other states the incidental powers which are necessary for its maintenance and business," or necessary to enable it to carry on its main purpose. 18 C. J. S. 588, sec. 178 (2). We conclude that if the transmission lines in South Dakota were purchased as property necessary for the latter purposes it would be the exercise of a power conferred by law.

These distinctions are aptly illustrated in *State v. Mitchell Irrigation District*, 129 Neb. 586, 262 N. W. 543. In that case defendant irrigation district's necessary headgates, diversion works, and appropriation, were in the state

of Wyoming, by permission of that state, but this court held that the irrigation district, having been organized under the laws of Nebraska, and irrigating lands wholly within this state, was by residence subject to the jurisdiction of the state of Nebraska.

In *Langdon v. City of Walla Walla,* 112 Wash. 446, 193 Pac. 1, the defendant Washington city in its proprietary capacity purchased lands in the state of Oregon for the necessity of its water supply. The court held that the city in its proprietary capacity had acquired the necessary power from the state of Washington to acquire and own such property in the state of Oregon (distinguishing *Becker v. City of La Crosse,* 99 Wis. 414, 75 N. W. 84, wherein such power did not exist), and that whether or not the city might be able to exercise such power in the state of Oregon was a question to be decided under the laws and the Constitution of that state. See, also, 44 C. J. 187, sec. 2329.

In view of these authorities and others heretofore cited, we conclude that the allegations of the amended information alleging that respondent did not have the power to purchase the interconnected transmission lines in South Dakota, are insufficient and do not state a cause of action in *quo warranto.*

Relator and interveners allege, in substance, that section 70-713, Comp. St. Supp. 1939, requires respondent, upon purchase of the electric facilities serving a city or village, to assume all contractual obligations of any franchise or contract assigned to such district; that Western Public Service Company guaranteed contractually the payment of certain municipal bonds of Sidney, Grant, and Republican City, but respondent terminated such guaranties without notice to or consent of such cities and in so far as is known, or it is able to be ascertained, has made no provision to fulfill such obligations.

These allegations do not state a cause of action in *quo warranto.* "In *quo warranto,* as in other civil proceedings, the cause of action should exist and be complete when the proceedings are commenced." 44 Am. Jur. 130, sec. 61.

See, also, *People v. City of Whittier*, 133 Cal. App. 316, 24 Pac. (2d) 219. *Quo warranto* will not lie to ascertain whether a corporation intends in good faith to carry out the express purpose of its organization. 5 Fletcher, Cyc. Corp. (Perm. ed.) 806, sec. 2332. *Quo warranto* will not lie to test the validity of a contract which is a mere incident to the execution of a power conferred on a public corporation. 6 McQuillin, Municipal Corporations, (2d ed.) sec. 2696. See, also, *People v. City of Springfield*, 61 Ill. App. 86. " * * * the remedy by *quo warranto* cannot be used for the enforcement or forfeiture of a municipal contract, * * * ." 5 Fletcher, Cyc. Corp. (Perm. ed.) 810, sec. 2332. The violation of a contract must be redressed, as all ordinary wrongs are redressed, by the usual remedies. 2 Bailey, Habeas Corpus, 1336, sec. 350.

In *State v. Scott*, 70 Neb. 681, 97 N. W. 1021, our own court said: "The original writ of *quo warranto*, which has been largely superseded by informations in the nature of *quo warranto*, was a high prerogative writ and, like all other extraordinary processes, it generally would only lie when no other adequate remedy would afford the required relief. The rule appears to even go further with reference to *quo warranto* than with reference to extraordinary proceedings by injunction or mandamus. In the latter, it being the rule that they may be invoked where there is no adequate remedy at law, but in *quo warranto* it is held that it will not lie where there is even an adequate remedy by bill in equity." See, also, 51 C. J. 321, 323; 44 Am. Jur. 96, sec. 14.

The foregoing authorities likewise apply to relator's and interveners' allegations that respondent violated certain agreements between Western Public Service Company and certain named cities whereby the cities had an option upon 90 days' notice of a proposed sale, to purchase and take over from the Western Public Service Company certain electrical facilities within their own borders. In addition, however, we call attention to the fact that section 70-712, Comp. St. Supp. 1939, specifically gives the cities aggrieved a con-

tinuing option to purchase such electric distribution system situated within or partly within such cities or villages from respondent, who is thereby required to sell. If relator and interveners have a cause of action against respondent relating to contractual responsibility there are other adequate remedies. Relator and interveners have not cited any authority holding otherwise. They have not attempted in any manner to answer respondent's contentions that *quo warranto* cannot be maintained if there are other adequate remedies at law or in equity.

There are other allegations in the petition in intervention of the city of Scottsbluff alleging misconduct of officers and employees of respondent in an election held as provided by law to determine whether the city of Scottsbluff should appropriate and acquire its then serving electric system from respondent, which proposal was defeated by the voters of that city. These allegations do not state a cause of action because *quo warranto* is employed only to test the actual right to an office or franchise, and it can afford no relief for official misconduct or be used to test the legality of the official action of public or corporate officers. See High, Extraordinary Remedies (3d ed.) 573, sec. 618; *State v. Conklin*, 127 Neb. 417, 255 N. W. 925; *State v. Drainage District, supra; State v. Scott, supra.*

Accordingly, we decide that respondent's demurrers, and each and all of them, should be sustained for the reasons given herein, and that the amended information and petitions in intervention are each and all hereby dismissed, without prejudice to any other remedy either at law or in equity.

DISMISSED.