EUGENE J. HYNES, APPELLEE, V. KELLY MICHAEL HOGAN, APPELLANT.

553 N.W.2d 162

Filed July 23, 1996. No. A–95–1337.

Kelly Michael Hogan, pro se.

Edward D. Steenburg for appellee.

HANNON, SIEVERS, and MUES, Judges.

MUES, Judge.

Kelly Michael Hogan appeals from the decision of the district court for Garden County which found Hogan, the Garden County Attorney, guilty of official misconduct pursuant to Neb. Rev. Stat. § 23-2001(7) (Reissue 1991) and declared the office of county attorney vacant.

## STATEMENT OF FACTS

In November 1994, Kelly Michael Hogan was elected to the office of Garden County Attorney. Hogan's opponent in the election, Eugene J. Hynes, is the appellee in this action. At the time of the election, Hogan resided in Ogallala, Nebraska, in Keith County, where he had a private law practice. Hogan lived with his son, Cory, who was a senior at Ogallala High School and was scheduled to graduate in May 1995.

Prior to being sworn in as the Garden County Attorney in January 1995, Hogan leased a house in Garden County,

established telephone service in his name at the house, changed his voter registration to Garden County, renewed his driver's license in Garden County, and moved his private law practice to Oshkosh, Nebraska, which is located in Garden County. In March 1995, when the registration became due on his motor vehicle, Hogan registered his motor vehicle in Garden County. In addition, Hogan used his Garden County mailing address on his 1994 income tax return and on his son's federal student aid application, both prepared after January 1995.

Lori Zeilinger, the Perkins County Attorney, testified that at a court appearance on March 17, 1995, Hogan stated that he had not yet moved to Oshkosh. In addition, a report received into evidence from Sharon Stumpf, a private investigator, showed that as of March 20, Hogan was still staying at his Ogallala residence. The Garden County Sheriff, Kit Krause, testified that until April, Hogan had not provided him with a personal telephone number in Garden County. Before that time, Krause would normally reach Hogan during nonbusiness hours by phoning his home in Ogallala. Hogan's neighbor in Ogallala, Gary Krajewski, testified that he observed Hogan's vehicle at the Ogallala residence from time to time from January until sometime in March. Rex Wheeler, a law enforcement officer from Garden County, testified that on a morning in March or April, Wheeler went to Hogan's Oshkosh residence to pick up Hogan because Hogan's vehicle was snowed in.

Hogan does not dispute that he continued to maintain his home in Ogallala and that he primarily spent his nights at the Ogallala house until March 1995, when this action was filed. After the lawsuit was filed, Hogan spent 3 to 4 days a week in Oshkosh. Hogan testified that he planned to stay in Ogallala until May, when his son graduated from high school. Hogan is the sole custodian of his son. Further, Hogan testified that it was his intent to permanently reside in Garden County.

On March 21, 1995, Hynes filed a complaint for removal, alleging that Hogan had continued to reside in Ogallala, Keith County, in violation of Neb. Rev. Stat. § 23–1201.01 (Cum. Supp. 1994). Further, Hynes alleged that by continuing to reside in Keith County, Hogan was guilty of official misconduct pursuant to Neb. Rev. Stat. § 28–924 (Reissue 1995), and that

Hogan's office should therefore be declared vacant pursuant to Neb. Rev. Stat. § 32–560 (Cum. Supp. 1994). Hogan filed a demurrer to the petition, alleging that Hynes had failed to follow the proper procedure to remove a public official under the circumstances. Specifically, Hogan stated that the proper procedure under the circumstances was a quo warranto action pursuant to Neb. Rev. Stat. § 25–21,122 (Reissue 1995) and alleged that Hynes failed to fulfill the requirements necessary to initiate such an action. In addition, Hogan alleged that Hynes failed to allege facts sufficient to constitute official misconduct pursuant to § 28–924.

Trial was held on Hynes' complaint on May 25, 1995. In a journal entry dated June 7, 1995, the court found that Hogan was in violation of § 23–1201.01 and that his actions constituted official misconduct pursuant to § 23–2001. Thereupon, the court declared the office of Garden County Attorney vacant and ordered that a copy of the judgment be entered upon the election book. On June 15, Hogan filed a motion for new trial. The court overruled the motion on November 7. Hogan timely appeals from this order.

## ASSIGNMENTS OF ERROR

On appeal, Hogan alleges that the district court erred by (1) failing to sustain Hogan's demurrer, (2) failing to apply the correct standard of proof to the evidence, (3) failing to require Hynes to initiate a quo warranto proceeding, (4) failing to find that Hogan was a resident of Garden County, and (5) finding that Hogan's failure to reside in Garden County constituted official misconduct under § 28–924.

## STANDARD OF REVIEW

A demurrer which challenges the sufficiency of the allegations is a "general demurrer," and in an appellate court's review of a ruling on such demurrer, the court is required to accept as true all facts which are well pled and proper and reasonable inferences of law and fact which may be drawn therefrom, but not conclusions of the pleader. *Ventura v. State*, 246 Neb. 116, 517 N.W.2d 368 (1994); *Curtice v. Baldwin Filters Co., ante p.* 351, 543 N.W.2d 474 (1996). In ruling on a demurrer, the petition is to be construed liberally; if as so

construed, the petition states a cause of action, the demurrer is to be overruled. *Proctor v. Minnesota Mut. Fire & Cas.*, 248 Neb. 289, 534 N.W.2d 326 (1995).

## DISCUSSION

Hogan first asserts as error the district court's failure to sustain his demurrer to Hynes' complaint for removal. Preliminarily, although Neb. Rev. Stat. § 23-2001 et seq. (Reissue 1991) does not specify that a demurrer is an available pleading in removal proceedings, § 23-2006 provides that a defendant "may move to reject the complaint upon any ground rendering such motion proper . . . ." Further, § 23-2003 states that "[t]he proceedings shall be as nearly like those in other actions as the nature of the case admits . . . ." We therefore construe Hogan's demurrer as a proper pleading in this matter and treat it as we would any demurrer under our rules of civil procedure. Specifically, Hogan contends that Hynes' complaint for removal failed to allege a cause of action for removal from office based upon official misconduct. Hogan argues that his alleged failure to reside within Garden County at most caused him to be ineligible to serve as county attorney, but did not constitute official misconduct.

Section 23-2001 provides that "[a]ll county officers may be charged, tried, and removed from office . . . for (1) habitual or willful neglect of duty, (2) extortion, (3) corruption, (4) willful maladministration in office, (5) conviction of a felony, (6) habitual drunkenness, or (7) *official misconduct as defined in section 28-924.*" (Emphasis supplied.) Section 28-924 states in part that "[a] public servant commits official misconduct if he knowingly violates any statute or lawfully adopted rule or regulation *relating to his official duties.*" (Emphasis supplied.)

Hynes alleges that Hogan's failure to reside in Garden County is a knowing violation of § 23-1201.01. We note that subsequent to this action, the Nebraska Legislature amended § 23-1201.01 to provide that a county attorney serving in a county which does not have a city of the metropolitan, primary, or first class may reside in an adjoining Nebraska county. See § 23-1201.01 (Supp. 1995). However, § 23-1201.01 as it was in effect at the time of this action provides in part that "a county

attorney shall reside in the county in which he or she holds office." It is Hogan's assertion that even if Hynes' allegation that Hogan knowingly violated § 23–1201.01 were true, this violation did not "relat[e] to his official duties" and therefore did not constitute official misconduct; thus, the removal authorized by § 23–2001 is not available. Specifically, Hogan argues that residency is merely a qualification for the job of county attorney, and does not "relat[e] to his official duties."

In *State v. Jones*, 202 Neb. 488, 490, 275 N.W.2d 851, 853 (1979), the court found that a Cherry County commissioner was not a resident of Cherry County, in violation of "[Neb. Rev. Stat. §] 23–150, R. R. S. 1943, [which] provide[d]: 'The commissioners shall have the qualifications of electors, and shall be residents of their respective districts.' " In so finding, the court held that the commissioner "ceased to be a resident and qualified elector of Cherry County" and therefore affirmed the order vacating the commissioner's office. 202 Neb. at 493, 275 N.W.2d at 854. This was a quo warranto action. Quo warranto affords no relief for official misconduct of a public officer. See *State, ex rel. Johnson, v. Consumers Public Power District*, 143 Neb. 753, 10 N.W.2d 784 (1943). Thus, while the court in *State v. Jones, supra*, did not discuss whether the commissioner's violation of the residency requirement constituted official misconduct, it is implicit in the court's affirmation of the quo warranto procedure that the residency violation was not deemed to be official misconduct.

Although the term "official misconduct" found in § 23–2001, as defined in § 28–924, has not been construed by either the Nebraska Supreme Court or this court, it has been stated that

> mere misconduct while in office, not constituting official misconduct, is not sufficient ground for removal of a prosecuting attorney, and that in order to warrant removal from office, the act of malfeasance must have a direct relation to, and be connected with, the performance of official duties, and the *conduct charged must be something that the officer did in his official capacity*.

(Emphasis supplied.) 27 C.J.S. *District and Prosecuting Attorneys* § 7(3) at 636 (1959). See, also, 63A Am. Jur. 2d *Prosecuting Attorneys* § 17 (1984).

Hogan's alleged failure to reside in Garden County was not an act performed in his "official capacity" as county attorney, nor can it be characterized as relating to the performance of an "official" duty. The duties of a county attorney are outlined in Neb. Rev. Stat. § 23–1201 (Reissue 1991) and include such things as preparing, signing, verifying, and filing complaints; consulting with victims prior to reaching plea agreements with defendants; prosecuting or defending, on behalf of the state or county; filing annual inventory statements; and reporting the final disposition of all criminal cases. Section 23–1201 does not include within the duties of a county attorney the requirement that a county attorney reside within the county being served. Moreover, § 28–924 provides that to constitute official misconduct, the violation must be of a statute, rule, or regulation *relating to* a public servant's official duties.

In ascertaining the meaning of a statute, we must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, it being our duty to discover, if possible, the Legislature's intent from the language of the statute itself. *Koterzina v. Copple Chevrolet*, 249 Neb. 158, 542 N.W.2d 696 (1996); *Becker v. Nebraska Acct. & Disclosure Comm.*, 249 Neb. 28, 541 N.W.2d 36 (1995). Webster's Third New International Dictionary, Unabridged 1916 (1993) defines "relate" in relevant part as follows: "to show or establish a logical or causal connection between . . . to be in relationship . . . ."

We do not find a "connection" between the residency requirement and the official duties of the county attorney, such as to establish that a violation of the residency statute constitutes official misconduct. Rather, as was the case in *State v. Jones*, 202 Neb. 488, 275 N.W.2d 851 (1979), residing in the county being served is a qualification to holding the office of county attorney. Indeed, Hynes concedes at oral argument that the position does not prohibit a private law practice conducted in a different county, a fact which effectively defuses an argument that county residence is considered necessary to the performance of that position. In light of this, we find that the allegation that Hogan failed to reside in Garden County is

insufficient to charge official misconduct and that Hynes' complaint for removal, even when construed liberally, failed to state a cause of action under § 23-2001.

However, this does not end our analysis. If from the facts stated in the petition it appears that the plaintiff is entitled to any relief, a general demurrer will not lie. *SID No. 57 v. City of Elkhorn*, 248 Neb. 486, 536 N.W.2d 56 (1995); *Wheeler v. Nebraska State Bar Assn.*, 244 Neb. 786, 508 N.W.2d 917 (1993); *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 244 Neb. 408, 507 N.W.2d 275 (1993). Hogan's demurrer essentially concedes that the quo warranto proceeding envisioned and authorized by Neb. Rev. Stat. § 25-21,121 et seq. (Reissue 1995) could accomplish the result sought by Hynes' lawsuit if in fact Hogan was found to have violated the residency requirement as alleged.

Pertinent provisions of the quo warranto statutes require that an information be filed by the Attorney General or by the county attorney of the proper county against any person unlawfully holding or exercising a public office. Any elector may file the information if the county attorney refuses to do so within 10 days after being notified in writing by an elector that a person unlawfully holds or exercises a public office. In that event, the person filing is required to file a bond of not less than $500 conditioned upon prosecution of the action without delay and payment of all costs, including a reasonable attorney fee to the person against whom the information is filed, if the action is unsuccessful. Attorney fees are to be fixed by the court and taxed as costs. Hynes' petition contains no allegation that he notified the county attorney in writing about filing an information, that the county attorney refused to file the information, or that Hynes filed the appropriate bond.

In considering a demurrer, a court must assume that the pleaded facts, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *SID No. 57 v. City of Elkhorn, supra*; *Calabro v. City of Omaha*, 247 Neb. 955, 531 N.W.2d 541 (1995); *Dalition v.*

*Langemeier*, 246 Neb. 993, 524 N.W.2d 336 (1994); *First Nat. Bank in Morrill v. Union Ins. Co.*, 246 Neb. 636, 522 N.W.2d 168 (1994).

Even if we were to liberally construe the petition as one seeking quo warranto relief under § 25-21,121, we would find that the demurrer should have been sustained, since the allegations necessary for quo warranto relief were not presented.

We conclude that Hogan's first assignment of error is therefore meritorious. Hynes' petition failed to state a cause of action under either the removal statute or quo warranto. Hogan's demurrer was valid, and the district court erred in not sustaining it. Therefore, it is unnecessary to address the balance of Hogan's assigned errors. However, we must address one remaining issue.

■ The law is firmly established that after a demurrer is sustained, an opportunity to amend the petition should be granted unless there is no reasonable possibility that the plaintiff will, by amendment, be able to state a cause of action. *Gallion v. Woytassek*, 244 Neb. 15, 504 N.W.2d 76 (1993). Based on our discussion above, there is no reasonable possibility that Hynes will, by amendment, be able to state a cause of action for removal based on Hogan's alleged official misconduct, so long as the sole basis for the official misconduct is Hogan's alleged violation of § 23-1201.01. Noncompliance with § 23-1201.01 does not constitute official misconduct as defined in § 28-924 so as to authorize removal of a county attorney pursuant to § 23-2001(7). Whether other facts might be alleged to bring into play one or more of the remaining six subsections of § 23-2001, we, of course, have no way of knowing. Similarly, whether other facts might be alleged in good faith which, if proven, constitute official misconduct under §§ 23-2001(7) and 28-924 is an unknown.

As to the quo warranto matter, Hynes' alleged status as a resident of Garden County is obviously insufficient to authorize him to bring such proceeding. See § 25-21,122. Yet, we are in no position to measure the likelihood of Hynes' making good faith allegations sufficient to meet the varied and sundry

requirements of the quo warranto statutes, only a few of which we have referenced above.

The law is clear that if any reasonable possibility exists to cure the defects which render a plaintiff's petition demurrable for failure to state a cause of action, leave to amend should be granted. *Gallion v. Woytassek, supra.* Thus, Hynes must be granted such leave.

## CONCLUSION

Hynes' complaint, whether construed as one for removal or in quo warranto, did not allege facts sufficient to state a cause of action. The district court erred in not sustaining Hogan's demurrer and in proceeding to trial on Hynes' complaint. The judgment of removal is reversed and the matter remanded for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.