REQUESTED BY: Senator Chris Beutler Nebraska State Legislature
This is in response to your request for an opinion of this Office relating to the investment authority of cities of the primary class for purposes of investing in equity securities. The specific question you ask is "whether LB 186 is consistent with the Nebraska Constitution to the extent it would permit subdivisions of the state to make de minimus investments in federally regulated funds and securities under applicable state investment guidelines." The legal issue framed by your question is whether the LB 186 amendments to Neb. Rev. Stat. § 15-849 (Cum. Supp. 2004) would constitutionally permit investment of city funds in capital stock and other securities of private corporations or associations.
It is our opinion that the amendatory provisions of LB 186 would not serve to constitutionally authorize nor permit cities of the primary class, subdivisions of the state, to invest city funds in equities, capital stock or other securities of private corporations or associations. Due to the constitutional prohibition of such investments, we believe that amendment of Art. XI, § 1 of the Nebraska Constitution would be necessary to obtain explicit constitutional authority for broader investment of surplus funds of cities of the primary class or other subdivisions of the state.
 BACKGROUND
The question you ask is fact specific and we have based our analysis on the information included in the request letter of January 24, 2005. For purposes of legal analysis, it is critical to know the nature of the funds available for investment. That is, whether the funds to be invested are private or public funds. The constitutional limitation has been held not to apply to purely private funds managed by the state in other jurisdictions having similar constitutional limitations. An example of private funds are college tuition payment programs permitting families to make advance purchases of tuition for students in future years or similar programs. For purposes of this opinion, the funds for investment are considered to be public funds owned by the city or other government subdivision.
We also point out that the Nebraska Constitution establishes broad investment authority for funds of city, police, or fire pension or retirement plans. Article XV, § 17(2) provides that the Legislature may authorize the investment of retirement or pension funds in such manner and in investments as the governing body of the city or political subdivision may determine subject to limits provided by statute.
Briefly described, LB 186 would expand the investment authority of cities of the primary class to invest funds in (1) securities of the United States, the State of Nebraska, a city of the primary class, a county in which such city of the primary class is located, or a school district of such city, (2) securities of municipally owned and operated public utility property and plants, or (3) such securities in which the state investment officer is authorized to invest pursuant to the Nebraska Capital Expansion Act and the Nebraska State Funds Investment Act and as provided in the authorized guidelines of the Nebraska Investment Council in effect on the date the investment is made.[1] Section 15-849
currently limits investment by the city treasurer to purchases of certificates of deposit of banks, capital stock financial institutions, or qualifying mutual financial institutions selected as depositories of city funds. Other provisions establish bond requirements for safekeeping and payment of deposit amounts. See Neb. Rev. Stat. § 15-845 to 15-848
(Cum. Supp. 2004).
 STATUTORY PROVISIONS AND INVESTMENT GUIDELINES
It is generally established that municipalities hold and exercise their powers subject to legislative control and the legislative authority over the civil, political, and governmental power of municipal corporations is limited by the Federal and State Constitutions. The fiscal and investment authority of state subdivisions is reposed in statute. Neb. Rev. Stat. §15-845 (Cum. Supp. 2004) requires the treasurer of a city of the primary class to deposit, and at all times keep on deposit in financial institutions, all money received or held by the treasurer. Neb. Rev. Stat. § 15-849 (Cum. Supp. 2004) authorizes the treasurer to purchase certificates of deposit and make time deposits in financial institutions.
Other provisions afford broader investment authority for state subdivisions. Neb. Rev. Stat. § 77-2341 (2003) authorizes cities and other governmental subdivisions, except school districts, to invest its surplus funds in any securities in which the state investment officer is authorized to invest in.[2] Section 77-2341 in relevant part states:
 (1) Whenever any county, city, village, or other governmental subdivision, other than a school district, of the State of Nebraska has accumulated a surplus of any fund in excess of its current needs. . . the governing body of such county, city, village, or other governmental subdivision may invest any such surplus in excess of current needs. . . in certificates of deposit, in time deposits, and in any securities in which the state investment officer is authorized to invest pursuant to the Nebraska Capital Expansion Act and the Nebraska State Funds Investment Act and as provided in the authorized investment guidelines of the Nebraska Investment Council in effect on the date the investment is made. The state investment officer shall upon request furnish a copy of current authorized investment guidelines of the Nebraska Investment Council.
The State Investment Officer has broad investment authority subject to the "prudent man standard" under the direction of the Nebraska Investment Council. Neb. Rev. Stat. § 72-1246 (2003) in particular part states that "[t]he state investment officer shall invest in investments of the nature which individuals of prudence, discretion, and intelligence acquire or retain in dealing with the property of another. . ." For purposes of providing direction and guidelines for investment of funds by the State Investment Officer as well as for political subdivisions, the Nebraska Investment Council has adopted strategies set forth in Investment Policy Statements. Various policy statements are in place for different categories of funds available for investment by the State Investment Officer. For example, policy statements have been adopted that establish specific investment guidelines for each of the retirement plans under the administration of the Public Employees Retirement Board and for other state funds including the Operating Investment Pool and the Health Care Endowment Fund.
Importantly, the Nebraska Investment Council has adopted a policy applicable to governmental subdivisions, NEBRASKA INVESTMENT COUNCIL POLICY FOR POLITICAL SUBDIVISIONS. The policy statement includes the following recitals:
 The State of Nebraska Constitution explicitly prohibits subscription to stock by political subdivisions in Article XI. The statutes of the Legislature and significant precedent from State court decisions provide a distinction between the retirement funds of a political subdivision and the non-retirement funds of a political subdivision. The activity of the Legislature and the court system leads to the situation that the retirement funds of political subdivisions can own stock and the non-retirement funds of political subdivisions cannot. Thus, this policy distinguishes between retirement funds and non-retirement funds.
NEBRASKA INVESTMENT COUNCIL POLICY FOR POLITICAL SUBDIVISIONS, at 1, adopted January 28, 2003, amended September 27, 2004. (emphasis added).
Accordingly, the investment guidelines of the state investment officer set forth in the policy statement applicable to political subdivisions do not serve to authorize investment by government subdivisions in equity or other interests of private corporations or associations.
 CONSTITUTIONAL LIMITATIONS
The constitutional prohibition regarding ownership of stock applicable to governmental subdivisions of the State is set forth in Art. XI, § 1 of the Nebraska Constitution which states:
 No city, county, town, precinct, municipality, or other subdivision of the estate, shall ever become a subscriber of the capital stock, or owner of such stock, or any portion or interest therein of any railroad, or private corporation, or association.
The prohibition has been applied by the Nebraska Supreme Court to preclude investment by state subdivisions in stock or other ownership interests of private corporations or associations. In Nebraska League of Savings and Loan Assns. v. Mathes, 201 Neb. 122,266 N.W.2d 720 (1978), the Court considered whether the constitutional limitation prohibited political subdivisions from depositing funds in mutual savings and loan associations. The Court concluded that the constitutional provision barred the deposit of funds by subdivisions of the State of Nebraska in mutual savings and loan associations, whether federal or state chartered, except those funds authorized under Art. XV, § 17(2) of the Nebraska Constitution. In reaching this conclusion, the Court reasoned:
 The historical background warrants the conclusion that the constitutional provision was directed against the acquisition by a subdivision of the state of any ownership or proprietary interest in a private corporation or association. . .
Id. at 129, 266 N.W.2d at 724.
The holding of the Nebraska Supreme Court in Nebraska League of Savings and Loan Assns. is consistent with decisions in other jurisdictions having similar constitutional limitations. See Michigan Savings ; Loan League v. Municipal Finance Commission of the State of Michigan, 247 Mich. 311, 79 N.W.2d 590 (1956) (statute authorizing investment of school district funds in building and loan or savings and loan associations is invalid under constitutional prohibitions of subscription to corporate stock). In West Virginia State v. West Virginia Board of Investments, 194 W. Va. 143,459 S.E.2d 531 (1995), the Supreme Court of Appeals of West Virginia found that trust funds in a consolidated pension fund representing money of Public Employees Retirement System were state funds subject to the constitutional prohibition on state ownership of corporate stocks. In West Virginia State, the state constitution provided that the State shall not become a joint owner or stockholder in any company or association in the state or elsewhere. The West Virginia Court stated:
 The clear language of Article X, section six itself stands as a bar to state ownership of corporate stocks. This result is compelled by virtue of the fact that Article X, section six is written as an unconditional proscription of the State's investment in stock of any company or association.
Id. at 149, 459 S.E.2d at 537.
The Court of Appeals of Oregon, in ICMA Retirement Corp. v. Executive Department, 92 Or. App. 188,757 P.2d 868, review denied, 306 Or. 661, 763 P.2d 152
(1988), held the constitutional prohibition against state's purchase of corporate stock barred investment of employees' deferred compensation in a trust plan. The courts reasoned that the state would have a proprietary or ownership interest in the deferred compensation money that would be invested in the trust plan and thereby barred.[3]
However, the cases reach the opposite conclusion if it is determined that the funds for investment are not owned by the government or the governmental entity has no proprietary interest in the funds. In Sprague v. Staub, 205 Or. 507, 451 P.2d 49 (1969), the Supreme Court of Oregon held that an industrial accident commission fund and employees' retirement fund were trust funds which state treasurer held only as custodian and the state had no interest in the funds that would prohibit funds from being invested in stock of corporation pursuant to statutory authorization.
In reaching this conclusion the Court stated:
 We are of the opinion that the people intended the prohibition in Article XI, § 6 to apply only to funds owned by the state and not to funds which the state has expended and for which the state has received a quid pro quo, as it does, when it receives coverage for its employees through its contributions as employers to these funds.
Id. at 524, 451 P.2d at 58.
Thus, a distinction is made by the courts with respect to whether the funds for investment are public funds, that is, owned by the governmental subdivision. If the funds are private or the governmental subdivision has no proprietary interest, the courts generally have concluded that the constitutional limitation does not apply.
 PUBLIC PURPOSE OR USE
It is long established in Nebraska and in other jurisdictions that the constitutional prohibitions regarding subscription to or purchase of capital stock of private corporations were not intended to prevent governmental subdivisions from acquiring property for public use. In State ex rel. Johnson v. Consumers Public Power District, 143 Neb. 753, 10 N.W.2d 784 (1943), the Nebraska Supreme Court concluded that a subdivision may acquire stock to acquire physical property for a defined public purpose and stated:
 This provision of our Constitution must be construed with reference to the evils it was intended to correct or prevent. It was intended to prohibit any subdivision of the state from entering into private business by being associated as a stockholder, or by being a partner, or a part owner, in a private business venture or enterprise. . . Section 1, Article XI of our constitution was never intended to prohibit a purchase by a subdivision of the state of all the capital stock of a corporation solely for the purpose of lawfully acquiring the physical property of such corporation for a public use, constitutionally defined and lawfully authorized by the legislature.
Id. at 766, 767, 10 N.W.2d at 794. (emphasis added).
The LB 186 amendments do not purport to authorize the purchase of stock to enable a city of the primary class to acquire physical property for a defined public purpose. Rather, the amendments would broaden the authority of cities to invest in equities and thereby become a stockholder or part owner in a private business enterprise. We believe the LB 186 amendments would be narrowly construed by a court to preclude such investments in private entities consistent with the constitutional limitation set forth in Art. XI, § 1.
 OTHER AUTHORITIES
This office previously addressed the question whether the surplus funds of a county hospital may be invested in mutual funds comprised of U.S. Government Securities and obligations. In Neb. Op. Att'y Gen. No. 95041 (May 17, 1995) we concluded that it was generally permissible for a county to invest surplus funds in mutual funds comprised solely of U.S. Government obligations but, that the organization and prospectus of the investment company would have to be carefully examined to insure that the political subdivision was not acquiring an interest in the investment company. In the opinion, we commented, "[t]he Constitution's language certainly prohibits a county from investing in a mutual fund when the portfolio includes stock, but it does not specifically address the issue of mutual funds solely comprised of U.S. Government Obligations." Id. at 3. It was also concluded that an amendment to Art. XI, § 1 specifying that investment in management investment portfolios limited to U.S. Government securities would be required to remove the uncertainty due to the constitutional basis for the potential prohibition of such investments.
Other states' Attorneys General have addressed similar issues. An opinion of the Louisiana Attorney General concluded that Louisiana statutes allowing excess funds of political subdivisions to be invested in money market mutual funds were unconstitutional.[4] See 88 La. Op. Att'y Gen. No. 546 (1988). And, an opinion of the Arkansas Attorney General considered the question whether the Department of Corrections can purchase membership in a "cotton gin cooperative" which is capitalized with common stock. The Department would become a shareholder by buying stock in the cooperative and become a voting member.
Arkansas Constitution, Art. 12, § 7 provided, ". . .the State shall never become a stockholder, or subscribe to, or be interested in, the stock of any corporation or association." The Arkansas Attorney General concluded that, ". . .under the plain language of our constitution, that the Department's purchase of the stock in the association would therefore be unconstitutional." Ark. Op. Att'y Gen. No. 95-035 (February 21, 1995).
The Washington Attorney General has had occasion to thoroughly analyze and consider the issue whether it is consistent with the state constitution for the state investment board to use its statutory authority to purchase stocks and other corporate equities as part of its investment of funds in the advanced college tuition account. The Attorney General of Washington concluded that the state constitution limits the state with regard to the investment of state funds but the limitations have not been held to apply to purely private funds managed by the state. See Wash. Op. Att'y Gen. No. 05 (July 5, 2000).
In so concluding, the opinion stated:
 The first question is whether the funds to be invested in connection with the advanced college tuition program are public or private funds. If public funds are involved, the plain language of the constitutional provisions cited appears to prohibit the investment of such funds in corporate stocks or similar equities, since the result will quite clearly give the state an interest in the stocks of private corporations.
Id. at 4.
Lastly, the Washington Attorney General observed:
 We took a cautious view in AGO 1984 No. 22, suggesting that a further constitutional amendment was the safest way to establish broader investment authority for industrial insurance funds. (footnote omitted). Past legislatures have clarified their authority by obtaining explicit constitutional authority for broader investment of pension funds and industrial insurance funds. (footnote omitted). A similar amendment would remove all doubt with regard to the investment of the advanced college tuition program, but may prove to be unnecessary if the courts agree with this analysis.
Id. at 6.
We have also reviewed the opinion of the Colorado Attorney General you referenced in your request letter. In Col. Op. Att'y Gen. No. OAG 8600818 (March 10, 1986) the questions whether existing provisions of Colorado constitutional and statutory law authorize the state treasurer to invest funds in a real limited partnership were addressed. The Attorney General concluded that present statutes do not authorize such investments and that the application of relevant constitutional provisions would depend upon whether the statutory scheme serves a sufficient public purpose. In summary, the opinion stated, "I am unable at this time to form an opinion whether future legislation authorizing an investment would be constitutional. In order to satisfy constitutional restrictions, such legislation would have to narrowly demonstrate a discrete and particularized public purpose which would preponderate over any private interests incidentally served." Id. at 6.
We think the Colorado opinion is of limited assistance since it concluded that the proposed investments would exceed existing statutory authority and a conclusive opinion was not rendered concerning whether the constitutional provisions precluded the General Assembly from enacting legislation authorizing investment of public funds in a limited partnership.
The predominant view of the states attorneys general is that investment of public funds in capital stock or other equity interests of private businesses is violative of state constitutional limitations; except in circumstances where the acquisition of stock or other ownership interests is necessary to acquire property for a public use or purpose. And, it is the consensus view that constitutional amendment is necessary to remove any question of application of the constitutional prohibition, even where the funds to be invested by the government subdivisions are private.
 DE MINIMUS INVESTMENTS
Your question has been posed in the context of a government subdivision making "de minimus" investments in federally regulated funds and securities under applicable state investment guidelines. Information included in your request letter reflect that de minimus investments are those comprising "no more than 1% or 2%" of a particular entity's securities. We have found no case or other authority that has analyzed or decided the constitutional issue based on the percentage of ownership of the outstanding stock or capital of a private company purchased for investment.
We point out, however, that the constitutional prohibition is not aimed at control of a private concern but rather participating as an owner. The Nebraska Supreme Court's holding in State ex rel Johnson v. Consumers Public Power District reflects the view that purchase of a majority if not all of the capital stock of a private company to acquire physical property for public use does not fall within the constitutional prohibition. Thus, this line of authority suggests that purchases of lesser stock holdings, not for the purpose of acquiring physical property for public use, but rather for investment would be violative of the constitutional prohibition barring a government subdivision from being associated with a private company as a shareholder.
 SUMMARY
The case law and other authorities generally concur that government subdivisions are precluded from investing in corporate stocks and equities of private companies and associations under constitutional limitations prohibiting such ownership. For the most part, the courts have held that such constitutional limitations are not applicable to private funds or funds not owned by the governmental subdivision. The question whether the specific funds available for investment are public or private is complex and the courts may diverge on this issue.
For these reasons, it is our opinion that the LB 186 amendments are not consistent with the Nebraska Constitution to the extent it would permit subdivisions of the State to invest in stocks and bonds of private companies, associations, or corporations. We believe explicit constitutional authority is necessary for broader investment of surplus public funds of state subdivisions in capital stock and other equity ownership interests in private corporations and associations.
Sincerely,
 JON BRUNING Attorney General
Fredrick F. Neid
Assistant Attorney General
[1] The amendments of LB 186 do not serve to expand the investment authority of cities of the primary class because cities of the primary class and other subdivisions of the state, except school districts, already possess the investment authority provided by the LB 186 amendments. See Neb. Rev. Stat. § 77-2341 (2003).
[2] Similar authority is included for cities of the metropolitan class in Neb. Rev. Stat. § 14-563 (Cum. Supp. 2004).
[3] In ICMA Retirement Corp., it was argued that the state, even if technically the beneficial owner of the fund, may transfer the fund to a trustee to invest in corporate stocks. The Court disagreed and stated, "That argument ignores the basic requirement that the state cannot purchase stock with money it owns, which is precisely what it would do here." Id. 92 Or. App. 193, 757 P.2d 871.
[4] Article VII, § 14 of the Louisiana Constitution includes similar language to Art. XI, § 1 of the Nebraska Constitution. The Louisiana Constitution provision states in part, "Neither the state nor a political subdivision of a state shall subscribe to or purchase the stock of a corporation or association. . ."